**UNITED STATES of America**

v.

**Gary DETHLEFS, et al., Defendants.**

**Criminal No. 94–34–P–C.**

United States District Court,
D. Maine.

July 1, 1996.

George T. Dilworth, Asst. U.S. Atty., Jonathan A. Toof, Office of the U.S. Attorney, Portland, Maine, James W. Chapman, Jr., U.S. Department of Justice, Northern Criminal Enforcement Section, Washington, D.C., for Government.

John A. Ciraldo, Perkins, Thompson, Hinckley & Keddy, Portland, ME, for defendant David White.

*MEMORANDUM OF DECISION
AND ORDER*

GENE CARTER, Chief Judge.

Defendant David White seeks Judgment of Acquittal on Count II of the Superseding

Indictment. Docket No. 371. Count II seeks the criminal forfeiture of Defendant's interest in real property located at 280 School Street, Mansfield, Massachusetts. The Government objects to Defendant's Motion. Docket No. 377.

### I. FACTS

Defendant David White pled guilty to conspiracy to possess with intent to distribute and to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Defendant White is the owner of a one-quarter interest in a piece of property located at 280 school street in Mansfield, Massachusetts, hereafter referred to as "the Farm," that the government alleges is subject to forfeiture. David White, Rebecca White, Marsha White, and Dana White each own, as tenants in common, an undivided one quarter interest in "the Farm." The Whites' interest in the Farm was acquired by bequest from their mother. The portion of the property which contains the main house and approximately 18 acres of land is the subject of this criminal forfeiture.

At all relevant times, David White has resided in his home at 88 Tremont Street, Mansfield, Massachusetts. Rebecca White and Gary Dethlefs, both convicted coconspirators in this case, resided at the Farm and conducted activities in connection with the distribution of marijuana from the Farm.[1] It is conceded by the Government, that David White at no time personally used the Farm in any way to conduct any activities in con-

nection with the subject criminal conspiracy. David White did, however, have knowledge that Rebecca White and Gary Dethlefs used the Farm to further the goals of the conspiracy. Stipulation of Facts (Docket No. 379).

### II. DISCUSSION

#### A. Standard of Proof

Defendant asserts at various points in his memorandum that the Court should apply the beyond a reasonable doubt standard of proof to this case. Defendant David White's Memorandum of Law in Support of Motion of Acquittal (Docket No. 372) at 7. The Government, on the other hand, contends that the preponderance of evidence standard should apply. (Docket No. 377) at 11. It is unnecessary for the Court to determine what standard of proof governs the factual findings necessary to the disposition of this Motion because the relevant facts are stipulated to and there is no evidentiary conflict in the record. The Court taking, as it does, these stipulated facts as true, finds that the evidence would satisfy either of the proposed standards. The only issues in dispute are legal ones.

#### B. Defendant's Use

■ Defendant White argues that the criminal forfeiture statute at issue in this case should not apply to his one quarter interest in the Farm because *he* did not personally use the property to commit a felony. 21 U.S.C. § 853(a).[2] Defendant David

---

1. Rebecca White pled guilty to Criminal Forfeiture of her interest in the Farm on August 22, 1995.

2. Section 853(a) provides as follows:
   (a) Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—
   (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of such violation;
   (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and
   (3) in the case of a person convicted of engaging in a continuing criminal enterprise in

violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise. The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.
21 U.S.C. § 853(a).

White's Memorandum of Law in Support of Motion of Acquittal (Docket No. 372) at 3. In support of his argument, Defendant points to the distinction between the nature of civil and criminal forfeiture. The civil forfeiture action is brought *in rem* or against the property, such that the guilt or innocence of the property owner is irrelevant. By contrast, the criminal forfeiture action is *in personam*, or brought against the defendant. The *in personam* nature of criminal forfeiture, Defendant contends, indicates that there must be a nexus between the defendant's criminal conduct and the property to be forfeited.

Under established case law, members of a conspiracy are substantively liable for the foreseeable criminal conduct of the other members of the conspiracy. *See e.g., Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Moreover, although the Defendant may only have been involved in certain facets of the conspiracy, the Sentencing Guidelines provide that he be held accountable at sentencing for relevant conduct, including all foreseeable acts of his coconspirators conducted in furtherance of the conspiracy. *See* U.S.S.G. § 1B1.3(a)(1)(B) (Nov.1993) (including in relevant conduct "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense"). This Court agrees with the Government, that as long as any of these acts included the use or intended use of any part of the Farm by any of the Defendant's coconspirators to further the objectives of the conspiracy, Defendant White is subject to the sentencing consequences of those acts, including the forfeiture of his interest in the Farm. This remains true despite the fact that he personally never used the property in connection with drug trafficking. Because of his relationship as coconspirator with those who *did* use the Farm to further the goals of the conspiracy, Defendant White must bear responsibility for their conduct, which is fully attributable to him at sentencing.

In a RICO case, *United States v. Hurley*, 63 F.3d 1 (1st Cir.1995), the Court of Appeals for the First Circuit expressly extended the attribution principle to criminal forfeitures. The issue in *Hurley* was whether the defendant's criminal forfeiture liability was limited to laundered funds that he personally obtained, or whether his liability also included funds obtained by other members of the conspiracy. *Id.* at 21. Citing both the *Pinkerton* rule and the Sentencing Guidelines, *see* U.S.S.G. § 1B1.3(a)(1)(B), the Court found that the defendant's forfeiture liability extended to all funds laundered by the conspiracy, even not those personally handled by the defendant. *Id.* at 23.

Defendant nevertheless cites *United States v. Ragonese*, 607 F.Supp. 649, 652 (S.D.Fla. 1985), *aff'd* 784 F.2d 403 (11th Cir.1986), as authority in support of his contrary statutory interpretation. *Ragonese*, however, is factually distinguishable. In *Ragonese*, the defendant: (1) owned apartments from which his partner in a RICO enterprise conducted drug deals; (2) used the apartments as tax shelters; (3) was upset that his associate dealt drugs at the apartments, thereby frustrating Ragonese's efforts to renovate them; (4) owned planes that were used for both legal and illegal purposes connected with the RICO enterprise; (5) charged his RICO partner a fee when he used the planes; and (6) attempted to hide the planes from his partner. *Id.* at 651. On the basis of these facts, the district court found insufficient nexus between Ragonese's criminal conduct and the apartments, but a sufficient nexus between Ragonese and the planes. *Id.* at 652. *Ragonese*, however, was a RICO case where the Government's burden is to show beyond a reasonable doubt that defendant's interests in the apartments and the planes afforded him a source of influence over the RICO enterprise. The decision of the district court was based on the extent to which the totality of the circumstances linked Ragonese to the illegal use of his property, and not on the basis of the type of "personal use" limitation advocated by the Defendant in this case.

### C. Innocent Owner Provision

■ In further support of his argument that section 853 applies to only a defendant's use of the property at issue, White asserts that the criminal forfeiture statute lacks the "innocent owner" defense found in the civil forfeiture statute. On this point Defendant is simply wrong.

The criminal forfeiture statute, as the civil statute, provides for the innocent owner defense. 21 U.S.C. § 881(a)(7) (civil); 21 U.S.C. § 853(c) (criminal).[3] By their unambiguous language, these subsections provide protection from forfeiture for qualified "innocent owners." The convicted owner is necessarily excluded from the "innocent owner" protection afforded the criminal forfeiture statutory framework because a convicted defendant is, by definition, not innocent. 21 U.S.C. § 853(a). As discussed above, Defendant White stands convicted of participation in the very felony conspiracy that gives rise to the criminal forfeiture proceeding here at issue. Therefore, despite the statutory provision for "innocent owners," Defendant does not qualify as an innocent owner as described in the criminal forfeiture statute.

### D. Defendant's Interest in the Property

Defendant finally argues that because the government has not proven that *his* undivided quarter interest in the property was used to facilitate the drug conspiracy, insufficient evidence exists to forfeit that interest. The Government responds that it is only required to prove that a part of the Farm was used to facilitate the conspiracy's goals. The Court agrees with the Government.

Defendant's argument embodies two erroneous assumptions. First, the Defendant asserts that the Government has linked him to the criminal forfeiture on the basis of his "mere knowledge" of the property's use by Rebecca White and Gary Dethlefs. Defendant David White's Memorandum in Support of Judgment of Acquittal (Docket No. 372) at 7. Defendant mischaracterizes the Government's position. As discussed previously, Defendant's liability is premised on his conviction for participation in the drug conspiracy, and his consequent accountability at sentencing for the acts of his coconspirators conducted in furtherance of the goals of the conspiracy. By virtue of the stipulation, the Government's burden to show that the property was used to facilitate a criminal enterprise has been met.

■ Second, without further explanation Defendant argues that Rebecca White somehow used only her interest in the property to support the conspiracy and not Defendant's. Defendant misunderstands the nature of a tenancy in common. To have an undivided partial interest in property does not mean that you possess a physical portion of the property in that proportion. Defendants undivided quarter interest cannot be located at any place on the property. Instead, he has a one-quarter interest in the entire piece of property, not a whole interest in one-quarter of the property. If any part of the property is used at all Defendant's one-quarter interest is necessarily implicated. *See United States v. Bieri,* 21 F.3d 819, 823 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 208, 130

---

**3.** The civil forfeiture statute provides, in part:

All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(7). Whereas the criminal forfeiture statute provides, in part:

All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(c).

L.Ed.2d 138 (1994) (Section 853(a)(2)'s provision for the forfeiture of property used in connection with an underlying felony drug offense has been read to authorize the forfeiture of an entire tract, even when only a portion of it was used for prohibited purposes); *United States v. Littlefield,* 821 F.2d 1365, 1367 (9th Cir.1987).

### III. CONCLUSION

Accordingly, it is hereby *ORDERED* that Defendant David White's Motion for Judgment of Acquittal on Count II be, and it is hereby, *DENIED.*