# United States Court of Appeals
## For the First Circuit

No. 00-2191

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE GENAO, a/k/a EVARISTO MARTINEZ,
a/k/a LUIS TORRES
SANDRIA, a/k/a LUIS SANABRIA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Selya, Circuit Judge,

John R. Gibson,[*] Senior Circuit Judge,

and Lipez, Circuit Judge.

Martin I. Flax on brief for appellant.
Margaret E. Curran, United States Attorney, Donald C.
Lockhart and Stephanie S. Browne, Assistant United States Attorneys, on
brief, for appellee.

---

[*]Hon. John R. Gibson, of the Eighth Circuit, sitting by
designation.

**JOHN R. GIBSON, <u>Senior Circuit Judge</u>.** Searching for drugs with a warrant, Rhode Island police officers found only empty glassine paper packets in Jose Genao's second-floor apartment. Genao signed a consent-to-search form that included the vacant apartment on the third floor. When the police searched that apartment, they discovered 57 packets of heroin and a gun. Genao now appeals from his ensuing convictions for possessing heroin with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) (1994), and being a felon in possession of ammunition and of a firearm, each in violation of 18 U.S.C. § 922(g)(1) (1994).[1] Genao first disputes the district court's[2] denial of his motion to suppress the confessions and the physical evidence seized from the apartments. He claims that the affidavit the officers used to obtain the search warrant failed to show probable cause; that the physical evidence seized from the third-floor apartment was taken without his

---

[1] The jury that convicted Genao of these counts acquitted him of a count of possessing a firearm during a drug trafficking crime. The district court also dismissed a count against Genao for conspiracy to distribute heroin and to possess heroin with intent to distribute.

[2] The Hon. Mary M. Lisi, United States District Judge for the District of Rhode Island, ruled on Genao's pretrial motions. The Hon. Ronald R. Lagueux, United States District Judge for the District of Rhode Island, presided over his trial.

knowing and voluntary consent to the search; and that his confessions were obtained in violation of the Fifth Amendment.  Secondly, Genao argues that the district court abused its discretion when it denied his pro se motion to replace his appointed counsel without inquiring sufficiently into Genao's grounds for dissatisfaction.  We affirm the convictions.

The investigation that led to the search began when police received a tip from a confidential informant that Migdalia Ortiz (Genao's wife) was selling heroin out of a second-floor apartment at 14 Benedict Street in Providence.  The police learned that Migdalia Ortiz had previously been arrested for drug offenses.  The telephone number at the apartment was assigned to "Jose Ortiz."  The police arranged for the informant to make a controlled purchase of heroin at the Ortiz apartment.  They obeyed several common formalities for such a procedure: searching the informant to make sure that he had no contraband prior to the purchase, watching him enter the building and leave it, then inspecting the substance turned over by the informant after leaving the apartment.  In a field test, the substance tested positive for heroin.

The police prepared a search warrant affidavit reciting essentially the above facts.  They obtained a warrant to search the second-floor apartment and the couple for heroin or drug paraphernalia.

A team of eight to ten officers, accompanied by a police dog,

executed the search. In the second-floor apartment, the police found a brown box with hundreds of empty glassine packages of a sort commonly used to store drugs. The officers also noticed an open door leading to a third-floor apartment. When asked whether the third-floor apartment was occupied, Genao replied that it was vacant, but that he had a key to it and was functioning as the landlord. This conversation was conducted in English. Genao produced the key and demonstrated it to the officers. At the officers' request, Genao and Ortiz each signed a consent form written in English and Spanish (apparently Genao's first language) that authorized the police to enter the third-floor apartment, the second-floor apartment, and the basement.

In the upstairs apartment, the police seized 57 glassine packets of heroin, a scale, coffee grinders, a sifter, a scoop, packaging material, and two handguns with ammunition. The heroin was in a black bag, concealed from view atop a cabinet in the third-floor kitchen. The handguns and ammunition were hidden in a compartment built into one of the kitchen walls. There was no furniture or food in the upstairs apartment, nor any other signs that it was occupied.

After the items were seized, Detective Kevin O'Brien returned to the second floor. O'Brien showed Genao the seized items and said, "We've got a problem here." Before O'Brien could say anything else, Genao stated in English: "Everything's mine. I don't want my wife to get in trouble." O'Brien interrupted Genao and told him not to say

anything until he was advised of his rights.  After this, O'Brien gave Genao his <u>Miranda</u> rights in English.  Genao stated that he understood them.  Genao then repeated his statement that everything was his and that he did not want to get his wife in trouble.

I.

Genao argues that the affidavit underpinning the warrant was too weak to authorize the police to enter and search the second-floor apartment.  We review de novo the district court's holding that probable cause existed for the search.  <u>United States</u> v. <u>Sawyer</u>, 144 F.3d 191, 193 (1st Cir. 1998).  At the same time, we review deferentially the issuing court's assessment of the facts and inferences underpinning the warrant.  <u>Id.</u>[3]

Probable cause exists where the facts recited in the affidavit establish "'a fair probability that contraband or evidence of a crime will be found in a particular place.'"  <u>United States</u> v. <u>Baldyga</u>, 233 F.3d 674, 683 (1st Cir. 2000), <u>cert. denied</u>, 122 S. Ct. 164 (2001) (quoting <u>United States</u> v. <u>Khounsavanh</u>, 113 F.3d 279, 283 (1st Cir. 1997)).  While we have declined to hold that a "controlled buy" of the type carried out by the officers here will always establish probable

---

[3] A warrant-backed search may also be upheld on the ground that the officers were relying "reasonably ... on a warrant issued by a detached and neutral magistrate." <u>United States</u> v. <u>Leon</u>, 468 U.S. 897, 913 (1984).  The issue of reasonable reliance is moot here in light of our holding that the facts recited in the search warrant affidavit established probable cause.

cause to search the location where the informant was sent to buy drugs, see Khounsavanh, 113 F.3d at 285, a properly conducted controlled buy is formidable evidence to support a search.

Our prior decisions in Khounsavanh and United States v. Garcia, 983 F.2d 1160 (1st Cir. 1993), are instructive. In each of those cases, as in this one, police received a tip from an informant that drugs were being sold in one of the apartments in a three-family or three-story dwelling. They then arranged for the informant to make a controlled buy at that location. After searching the informant for drugs prior to the buy, and finding none, the police watched him enter and leave the building (though not the particular apartment in question). The returned informant stated that he had purchased drugs from one of the parties mentioned in his earlier tip. Finally, the police recovered from the informant illegal drugs of the same type described in the tip. See Khounsavanh, 113 F.3d at 285-87; Garcia, 983 F.2d at 1166-67. In both cases, we held that the buy gave enough corroboration of the assertion of illegal activity in the informant's tip to create probable cause, and we upheld both searches. See Khounsavanh, 113 F.3d at 285-86; Garcia, 983 F.2d at 1167.

Here, for similar reasons, we conclude that the totality of the circumstances reported in the affidavit was sufficient to establish probable cause to search Genao's second-floor apartment. The controlled heroin buy here was not perfectly monitored, nor (to judge from the

affidavit) did the informant buyer verify the name or specific location of the seller after emerging from the building. The buy did, however, yield a recovery of heroin consistent with the informant's original tip, recorded in the affidavit, that Migdalia Ortiz and her husband, "name unknown," were selling heroin in the second-floor apartment. Moreover, as the affidavit notes, phone company records showed a listing for Jose Ortiz at 14 Benedict Street, second floor. In view of these facts, the buy gave sufficient corroboration of the original tip to justify the search.

## II.

Genao next argues that even if the police were lawfully present on the second floor, he did not consent voluntarily to the search of the third floor, rendering the heroin and gun seized there inadmissible.

This argument has been waived. Genao raised no voluntariness challenge to the third-floor search in the district court. See Fed. R. Crim. P. 12(f); United States v. Santos Batista, 239 F.3d 16, 19-20 (1st Cir.), cert. denied, 122 S. Ct. 117 (2001) (pointing out that arguments to suppress evidence as illegally seized, if not raised at or before the suppression hearing, are treated as waived unless cause and prejudice can be shown; holding defendant's argument waived for this reason). More than that, his counsel, when questioned on this issue by the district court, expressly conceded that Genao was not making such a

challenge.  In light of this express concession to the court below, the argument is waived.[4]

Apart from the waiver, whether the government has established the voluntariness of consent to a search turns on the totality of the circumstances.  Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).  Genao executed a consent-to-search form that gave him, in both English and Spanish, a thorough set of warnings about his rights and the effects of a search.  In addition, Genao's volunteering the fact that he had a key to the third-floor apartment and showing the police how the key worked both indicate willing cooperation with the police.  See United States v. Zapata, 18 F.3d 971, 977 (1st Cir. 1994) (noting that defendant's act of freely handing over car keys to group of four officers was "evidence of consent inferable from conduct").

### III.

Genao also argues that both of his confessions should have been suppressed as the products of constitutional violations.  He claims that his first confession was coerced, which implicates the due process

---

[4] See United States v. Clarke, 227 F.3d 874, 881 (7th Cir. 2000), cert. denied, 531 U.S. 1182 (2001) (holding that when defendant affirmatively waived the argument that bullets and scale seized from his girlfriend's house were taken in violation of Fourth Amendment, by stating to the court that his motion to suppress did not encompass those items, the argument was waived rather than forfeited and therefore plain error review did not apply); United States v. Reveles, 190 F.3d 678, 683 (5th Cir. 1999) (holding that a constitutional right "explicitly waived ... at trial" could not be a basis for reversal on appeal).

-8-

clauses of the Fifth and Fourteenth Amendments. See United States v. Vega-Figueroa, 234 F.3d 744, 749 (1st Cir. 2000). He also claims that it resulted from custodial interrogation not preceded by appropriate warnings, which implicates the rule announced in Miranda v. Arizona, 384 U.S. 436 (1966). Either argument, if valid, would keep out the first confession. Establishing that the first confession was coerced would improve Genao's chances of keeping out his second confession, which followed Miranda warnings. See Oregon v. Elstad, 470 U.S. 298, 310-14 (1985).

Genao's first confession was not produced by coercion. "[O]nly confessions procured by coercive official tactics should be excluded as involuntary." United States v. Byram, 145 F.3d 405, 407 (1st Cir. 1998) (citing Colorado v. Connelly, 479 U.S. 157, 167 (1986)). The record establishes that the police did not apply undue or unusual pressure to Genao, use coercive tactics, or threaten him with violence or retaliation if he did not confess. See id. at 408. It is true that Genao was in custody when he confessed to Detective O'Brien, and a sizable team of police officers (plus the dog) was present in the apartment with him at the same time. But these facts without more do not add up to "police overreaching," as required for a holding of coercion. Connelly, 479 U.S. at 170. We conclude that Genao's first statement was not coerced.

Despite the lack of actual coercion, it is a constitutional

rule that a confession resulting from custodial interrogation not preceded by appropriate warnings is normally inadmissible against the speaker. Dickerson v. United States, 530 U.S. 428, 431-32, 444 (2000). Genao argues that he was in custody when the police searched the second- and third-floor apartments, and that Detective O'Brien's first words to him -- "We've got a problem here" -- amounted to interrogation. If true, this would require exclusion of the first confession.

The first confession, however, was not the product of a Miranda violation, for Detective O'Brien's brief remark to Genao did not constitute interrogation. For Miranda purposes, interrogation is "express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). Interrogation occurs only when police conduct is "reasonably likely to elicit an incriminating response from the suspect." Id. at 301. Moreover, "words or actions . . . normally attendant to arrest and custody" do not constitute interrogation. Id. (punctuation omitted).

In light of the circumstances here, O'Brien's remark to Genao was not the functional equivalent of questioning, nor was it reasonably likely to elicit an incriminating response. The district court found that Genao confessed before O'Brien could begin reading Genao his Miranda rights. This finding was not clearly erroneous in light of the record before us. In that context, O'Brien's words are reasonably viewed as a preliminary comment intended to get Genao's attention before

-10-

reading him his rights and explaining that he was under arrest. <u>Cf.</u> <u>United States</u> v. <u>Vazquez</u>, 857 F.2d 857, 863 (1st Cir. 1988) ("Although a purpose to elicit information is not dispositive, our consideration of the actual impact of the technique cannot help but be influenced by whether the police believed that it would produce a response from the suspect."). In addition, the remark was brief, was not worded in a particularly confrontational manner, and did not directly accuse Genao of any crime or seek to inflame his conscience. <u>Cf.</u> <u>United States</u> v. <u>Allen</u>, 247 F.3d 741, 764-65 (8th Cir. 2001) (holding that no interrogation occurred where police told suspect, who had requested but not yet received counsel, of the unfavorable results of the lineup in which he agreed to take part without counsel being present; police remark was "a simple description of the status of the . . . investigation," not interrogation); <u>United States</u> v. <u>Moreno-Flores</u>, 33 F.3d 1164, 1168-70 (9th Cir. 1994) (concluding no interrogation where police officer told defendant, who had invoked his right to silence, that agents had seized 600 pounds of cocaine and defendant was in "serious trouble").[5]

---

[5] A similar analysis applies to the officers' asking Genao whether the third floor was occupied, which prompted Genao to state that it was vacant, and that he was acting as the landlord. We note that Genao raised no <u>Miranda</u> challenge to the admission of these statements at trial, although he did not expressly waive such a challenge. Assuming plain error review applies, admitting the statements was not plain error. The officers' question was "much more of an informational inquiry incident to the arrest, as opposed to a query designed to induce

Genao's main argument for excluding his second confession, which came after <u>Miranda</u> warnings, is that it was tainted by the constitutional defects that he claims marked the first one. However, this argument was waived below. Genao's counsel specifically told the district court that Genao did not challenge the second confession's admissibility. <u>See</u> note 4 <u>supra</u> (discussing express waiver). Even if this waiver did not preclude review, our earlier conclusion that Genao's first confession was voluntary would all but foreclose his argument for excluding the second one. "A subsequent administration of <u>Miranda</u> warnings to a suspect who has given a voluntary but unwarned statement ordinarily ... suffice[s] to remove the conditions that precluded admission of the earlier statement." <u>United States</u> v. <u>Esquilin</u>, 208 F.3d 315, 319 (1st Cir. 2000) (quoting <u>Elstad</u>, 470 U.S. at 314). Our further conclusion that Genao's first confession was not even the result of a <u>Miranda</u> violation puts the matter beyond doubt. Both confessions were properly admitted.

IV.

Genao's final argument is that the district court committed reversible error by denying his motion for new counsel without making

an inculpatory remark." <u>United States</u> v. <u>Conley</u>, 156 F.3d 78, 84 (1st Cir. 1998) (holding that no interrogation occurred when a postal inspector asked an un-Mirandized defendant whether cash found in a search of the defendant's person was the defendant's own).

-12-

a sufficient inquiry into the nature and grounds of Genao's dissatisfaction. Genao disclosed his dissatisfaction in a pro se motion for dismissal of his appointed counsel, accompanied by his affidavit. Genao's motion stated that he sought to dismiss his appointed federal counsel, a Mr. Lepizzera, on the ground of "ineffective . . . assistance." In the affidavit, Genao complained chiefly that Lepizzera had wrongly encouraged him to accept a guilty plea in a related state court proceeding in which Genao was represented by a different appointed attorney. He also complained that "since I've been indicted, I haven't even seen my indictment or any legal papers." The motion was dated March 9, 2000. At that time, Genao's jury was scheduled to be empaneled on March 21, 2000.

The district court began its hearing on the motion by asking Genao to explain his problems with counsel "in [his] own words," then changed its mind and instead asked Genao to affirm that the reasons for his dissatisfaction were those given in his motion. Genao said yes. Next, Genao answered questions that the district court posed about his dissatisfaction with his attorney's advice to plead guilty in the state proceeding. The court also questioned Lepizzera about Genao's concerns with the state court guilty plea.

Genao then spoke spontaneously about his belief that counsel had failed to contact an exculpatory witness who, Genao claimed, planted the heroin that the police discovered on the third

-13-

floor, and another witness who allegedly purchased some of the heroin from Genao's wife.  The district court cut Genao off, saying: "You are going into areas that are not included in your motion."  The court did not ask appointed counsel any questions about his handling of Genao's concerns about exculpatory witnesses.  It denied the motion to substitute counsel without permitting Genao to speak again.

At trial, Lepizzera did not call witnesses, but he did argue that Genao's conduct showed that he did not know there were any drugs on the third floor.  His cross-examination of Detective O'Brien, the government's lead witness, laid a foundation for this argument.

We review the district court's denial of a motion to substitute counsel for abuse of discretion.  United States v. Richardson, 894 F.2d 492, 496 (1st Cir. 1990).  The relevant inquiry is described in United States v. Allen, 789 F.2d 90 (1st Cir. 1986):

> Where the accused voices objections to appointed counsel, the trial court should inquire into the reasons for the dissatisfaction . . ..  In evaluating whether a trial court's denial of [the] motion . . . constituted an abuse of discretion . . . the appellate court should consider several factors, including the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense.

Id. at 92, quoted in United States v. Prochilo, 187 F.3d 221, 225 (1st Cir. 1999).

-14-

Genao's argument is based on the second <u>Allen</u> factor: that because the district court prevented him from fully explaining one of his grounds for dissatisfaction, its inquiry was so inadequate as to amount to an abuse of discretion. In <u>Prochilo</u>, we held that the district court's complete failure to conduct any inquiry on the defendant's motion to substitute paid counsel for his appointed counsel was an abuse of discretion that required reversal of the conviction. <u>Id.</u> at 223, 229. Here, by contrast, the district court did hold a hearing, and discussed the motion with Genao and Lepizzera. The record makes clear that the court's inquiry into Genao's concern about his state court guilty plea was adequate.

The district court's handling of Genao's complaints about Lepizzera's trial preparation presents a closer question. The court apparently rejected Genao's claim that Lepizzera failed to investigate material witnesses on the ground that the claim was "not included in [Genao's] motion." Genao's motion alleged that he was receiving ineffective assistance of counsel, and his affidavit indicated that Lepizzera was not keeping in contact with him about his case. This claim might be read as raising an issue of attorney diligence. This court has emphasized, when dealing with motions for a continuance in order to substitute counsel, that "specificity in a motion of this sort cannot be required." <u>Prochilo</u>, 187 F.3d at 226. <u>Cf.</u> <u>Haines</u> v. <u>Kerner</u>, 404 U.S. 519, 520 (1972) (per curiam) (courts

-15-

should read pro se complaints less strictly than lawyer-drafted pleadings); Prou v. United States, 199 F.3d 37, 42 (1st Cir. 1999) (applying more tolerant standard of particularity to pro se motion for relief under 28 U.S.C. § 2255).

We must also consider "whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense."  Allen, 789 F.2d at 92.  Here, the conflicts alleged by Genao, in light of the record as a whole, do not establish a breakdown so severe that the district court's refusal to intervene was an abuse of discretion. The court rightly concluded that Genao's concerns about the state court guilty plea were not meritorious.  Lepizzera was not even Genao's counsel for the state court proceeding.  Moreover, the mere fact that a defense attorney and his client disagree about the advisability of a plea does not justify appointing new counsel.  See id. at 93.  The district court found that Genao was informed of the consequences of the state court plea when he ultimately decided to accept it, and this finding was not clearly erroneous.

Similar reasoning applies to Lepizzera's failure to present Genao's defense theory in exactly the way Genao wished, which would have involved an alleged exculpatory witness or witnesses.  Counsel has considerable discretion over the choice of trial tactics, and a disagreement between client and counsel on how best to structure a

-16-

defense does not normally establish the sort of conflict that on its own deprives the defendant of an adequate defense.  See Strickland v. Washington, 466 U.S. 668, 688-691 (1984); United States v. Anderson, 189 F.3d 1201, 1211 (10th Cir. 1999); United States v. Leggett, 81 F.3d 220, 227 (D.C. Cir. 1996).    We are also influenced by the fact that the district court is ill-positioned to evaluate, in a pretrial hearing, ineffective assistance claims based on an attorney's failure to pursue a particular type of defense.  It is hard to gauge the appropriateness of counsel's actions or omissions without knowing how the trial will actually play out.  Indeed, even after a trial is completed, we do not entertain ineffective assistance claims on direct appeal absent an evidentiary record that allows us to evaluate the fact-specific allegations.  See, e.g., United States v. Woods, 210 F.3d 70, 74 (1st Cir. 2000).  The preferable vehicle for such claims is a collateral proceeding under 28 U.S.C. § 2255, in which the parties and the district court can address factual matters relevant to the issue.  See United States v. Jadusingh, 12 F.3d 1162, 1169-1170 (1st Cir. 1994).  Genao, of course, remains free to pursue a Section 2255 petition directly addressing the issue.

        In light of the record before us, however, we are persuaded that the district court's denial of Genao's motion did not rise to the level of an abuse of discretion meriting reversal.  Since his

-17-

challenges to the search and to the admissibility of his confessions are also rejected, we affirm his convictions.

AFFIRMED.