# United States Court of Appeals
## For the First Circuit

No. 03-1767

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS LOPEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lynch, Circuit Judge.

Robert O. Berger for appellant.
Carlos Lopez on brief pro se.
Mark E. Howard, Assistant U.S. Attorney, with whom Thomas P. Colantuono, United States Attorney, was on brief for appellee.

August 19, 2004

**COFFIN, Senior Circuit Judge.** A jury convicted Carlos Lopez on eight criminal counts, including conspiracy to distribute cocaine base, distribution of cocaine base, and three firearms violations. On appeal, appellant raises two primary issues. First, he contends that key physical evidence, namely, a quantity of drugs and a loaded .40 caliber handgun, was obtained through an unlawful search of his vehicle. Second, appellant contests the admissibility of certain statements he made to law enforcement officers. He argues that the statements were the product of custodial interrogation that occurred after he invoked his right to counsel. Appellant also raises a series of issues relating to alleged prosecutorial vouching, the reliability of the drug dog used in the vehicle search, and the district court's denial of his motion for judgment of acquittal. Finding no infirmity in the district court's decision to admit both the physical evidence and appellant's statements, and detecting no basis for reversal or remand on any of appellant's other claims, we affirm the conviction on all counts.[1]

---

[1]Counsel for appellant submitted two letters pursuant to Fed. R. App. P. 28(j) in which he asserted that, under Blakely v. Washington, 124 S.Ct. 2531 (2004), this court should strike down the federal sentencing guidelines and remand this case. Blakely held that a sentence that was enhanced on the basis of factors found by the judge, rather than the jury, violated the defendant's constitutional right to trial by jury. The appellant in this case, however, received the minimum statutory sentence, and counsel has offered no explanation as to why Blakely would apply. The argument is thus waived. See Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 28 (1st Cir. 2003) (issue deemed forfeited by failure to marshal pertinent facts or engage in reasoned analysis).

# I.  Factual Background

Acting on a tip from a confidential informant, the Drug Enforcement Administration (DEA) and local law enforcement officers in New Hampshire began surveillance of a series of arranged drug transactions between appellant and Terri Tremblay, an unwitting friend of the informant.  The first such arranged buy occurred on May 11, 2001.  In what would become a pattern for subsequent transactions, Tremblay met the confidential informant at a Wendy's restaurant in Portsmouth, where the informant gave Tremblay cash - serialized funds provided by the DEA - to purchase crack cocaine.  Tremblay and the informant then met Lopez in the parking lot of the Beechstone Condominium complex, across the street from the Wendy's.[2]  Tremblay entered appellant's car and purchased crack cocaine with the serialized money.  She then gave the drugs to the informant.  After two such transactions in which the informant served as an intermediary between Tremblay and undercover task force officer John Perrachi, Perrachi began to arrange deals directly with Tremblay.  Lopez and Tremblay were arrested on July 25, 2001, during the fifth coordinated transaction.

On the night of the arrest, law enforcement officers observed Tremblay drive into the Beechstone parking lot, park her car next to a Dodge minivan, exit her vehicle, and enter the minivan.

_____

[2]Out of the five arranged deals, four occurred in the parking lot of the Beechstone apartment complex; the fifth occurred in a manner similar to the other four, but on a nearby side street.

-3-

Officers then converged on the minivan and arrested both appellant, who was in the driver's seat, and Tremblay, who was in the passenger seat. Tremblay and appellant were separated, and each told a different version of events to officers present at the scene. Appellant denied any knowledge regarding drugs, saying only that he met Tremblay in the parking lot because he hoped to have sex with her. Tremblay, however, wanted to cooperate and, according to law enforcement reports, explained that Lopez had brought with him a larger quantity of crack than she had been planning to purchase.

Because children lived in the Beechstone apartment complex, officers were particularly concerned with seizing the drugs believed to still be in the vicinity. A preliminary search of the vehicle at the scene of the arrest turned up $280 of the serialized funds (the remaining $20 was found on Tremblay's person), but, despite a drug-sniffing dog alerting three times to the passenger front seat, no drugs. A search of the surrounding wooded area and parking lot failed to yield any results. Due to poor lighting and the presence of a crowd of onlookers that had gathered around the scene, officers transported the van to the Portsmouth Police Department. Tremblay and Lopez, still separated, were also taken to the station.

At the station, after answering some initial questions about the registration of the van, appellant indicated he might be interested in cooperating and requested an attorney. DEA Special

Agents Steven Story and Norman Houle ceased questioning appellant and returned to the van to continue the search. Appellant was left in the interview room under the supervision of Officer Brandon Drysdale.

While searching the van, Story located a wire leading to a locked compartment under the front passenger seat. Suspecting that the compartment contained contraband, Houle went to fetch a camera to document the compartment and its contents. En route, he briefly entered the interview room, told Lopez that he and Story had found "the stuff" and that "the deal was off." Houle left the interview room immediately after making his remark. The compartment was later found to contain sixty-three grams of crack cocaine, a loaded semi-automatic .40 caliber handgun with an obliterated serial number, and a package of photographs bearing Lopez' name.

At trial, Drysdale testified that, upon hearing Houle's remark, Lopez became "very sad," remarking repeatedly that he was "fucked" and that "his life was over." Lopez then asked Drysdale what would happen to a person caught possessing both a gun and drugs. Drysdale replied that it was "a bad thing."

Prior to trial, appellant submitted a motion to suppress the guns and drugs found in the compartment, as well as his statements to Drysdale. Appellant argued that the search of the vehicle was unreasonable, justified neither as a search incident to arrest nor under the automobile exception to the warrant requirement. He protested that his statements were made during custodial

interrogation and without his having waived his <u>Miranda</u> rights and were thus inadmissible. After a hearing, the district court summarily denied the motion.

We review the district court's findings of fact with respect to a suppression motion for clear error. <u>United States</u> v. <u>Infante-Ruiz</u>, 13 F.3d 498, 501 (1st Cir. 1994). As a general matter, however, we review the district court's ultimate legal determination of probable cause de novo. <u>Ornelas</u> v. <u>United States</u>, 517 U.S. 690, 699 (1996).

## II. <u>Vehicle Search</u>

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Subject to limited exceptions, warrantless searches of private property are per se unreasonable. <u>California</u> v. <u>Acevedo</u>, 500 U.S. 565, 580 (1991); <u>United States</u> v. <u>Donlin</u>, 982 F.2d 31, 33 (1st Cir. 1992). The mobility of automobiles and the attendant need to prevent loss of evidence undergirds one such exception. A warrantless search of an automobile will be upheld if "officers have probable cause to believe that the vehicle contains contraband." <u>United States</u> v. <u>Ross</u>, 456 U.S. 798, 808 (1982).

The government bears the burden of proving the lawfulness of the search. <u>Mincey</u> v. <u>Arizona</u>, 437 U.S. 385, 390-91 (1978); <u>United States</u> v. <u>Cruz Jimenez</u>, 894 F.2d 1, 7 (1st Cir. 1990). Specifically, the government must demonstrate that law enforcement

officers had "a belief, reasonably arising out of circumstances known to the seizing officer," that the vehicle "contain[ed] that which by law is subject to seizure and destruction," Carroll v. United States, 267 U.S. 132, 149 (1925).[3]  Our focus is on "what the agents knew at the time they searched the car," United States v. Goldman, 41 F.3d 785, 787 (1st Cir. 1994).

At the suppression hearing, both DEA agents and New Hampshire police officers gave consistent and detailed testimony regarding the surveilled transactions, all of which occurred in a similar manner.  Officers were able to corroborate information supplied by the confidential source describing the vehicles driven by appellant, including the van used on the night of the arrest.  The appellant was positively identified both by the confidential source and agents familiar with him from a prior felony conviction.  Two witnesses - Officer Joslin and Agent Houle - personally observed Lopez during surveilled transactions occurring prior to the night of the arrest.  Furthermore, at the scene of the arrest, Tremblay explained to officers that Lopez had in his possession a larger quantity of crack cocaine than she intended to purchase, thus leading officers to believe that a substantial amount of drugs remained in the van.  Tremblay further described how, as the arrest

---

[3]The government makes no effort to justify the search as a search incident to arrest, see Chambers v. Maroney, 399 U.S. 42, 47 (1970) (acknowledging that search of an automobile occurring at a police station "some time after the arrest . . . cannot be justified as a search incident to an arrest"), and thus we focus our analysis on the existence of probable cause for the search.

team converged, Lopez leaned over her in the passenger seat, suggesting that appellant had either hidden or discarded the drugs. The latter possibility was of particular concern to officers given the presence of several children living in close proximity to the arrest site. Finally, a drug dog alerted aggressively in front of the passenger seat, suggesting that drugs were present but concealed.[4] In short, the district court reasonably concluded that officers had probable cause to search the van.

Appellant nevertheless contends that, under United States v. Kyllo, 533 U.S. 27 (2001), we are required to weigh the evidence of probable cause against the privacy interests of the individual whose property was subject to search. Kyllo is inapposite. In that case, the primary thrust of the court's analysis was "whether the use of a thermal-imaging device . . . to detect relative amounts of heat within the home constitutes a 'search' within the meaning of the Fourth Amendment." Kyllo, 533 U.S. at 29. Nowhere does the court conduct the type of balancing suggested by appellant

---

[4]Appellant also challenges the reliability of Turbo, the drug dog. See United States v. Owens, 167 F.3d 739, 749 (1st Cir. 1999) ("The existence of probable cause based on an alert by a drug dog depends on the dog's reliability."). Philip Ahlin, the dog's trained handler, testified at the suppression hearing that Turbo was certified at the time of the search and had never - in Ahlin's experience with the dog - given a false indication. Ahlin explained that, during the search, Turbo's interest was consistently focused on the front passenger seat, even when Ahlin directed Turbo to other areas of the van. Cross-examination of Ahlin in no way undermined this evidence of reliability and consistency. We defer to the district court on this matter without further explanation.

concerning the reasonableness of the search rather than the threshold determination of whether a search occurred.

Even if we were to turn to Kyllo for guidance, the recognized privacy interest is of a different caliber from that in the present case because the search there involved a home rather than a car. See New York v. Class, 475 U.S. 106, 112 (1986) ("The Court has recognized that the physical characteristics of an automobile and its use result in a lessened expectation of privacy therein[.]"). Although the Supreme Court has acknowledged that the stop and search of a vehicle does present a conflict between "the individual's constitutionally protected interest in privacy and the public interest in effective law enforcement," Ross, 456 U.S. at 804, the Court has also made clear that "[t]hese interests must yield to the authority of a search" justified by probable cause. Id. at 823. The fact that the contraband was in a container in a locked, hidden compartment does not justify any extra measure of consideration. The Supreme Court has explicitly stated that "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."[5] Acevedo, 500 U.S. at 580; see also Owens, 167 F.3d at

---

[5]Appellant argues that United States v. Maple, 348 F.3d 260 (D.C. Cir. 2003), applies the Kyllo rationale to warrantless searches of an automobile. Maple, however, dealt with the reasonableness of a search in which there was no probable cause to suspect contraband. The appellant in that case had been stopped for speeding and subsequently arrested for driving with a suspended license. This is markedly different from the facts before us, in which law enforcement officers had a reasonable belief that

750 ("[I]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.") (quoting Ross, 456 U.S. at 800).  Similarly, "efforts to restrict access to an area do not generate a reasonable expectation of privacy where none would otherwise exist," Class, 475 U.S. at 114.

The government has presented ample evidence demonstrating that law enforcement officers had probable cause to search the vehicle and the compartment.  The relocation of the vehicle from the parking lot to the police station did not deprive the officers of probable cause to search.  See Chambers, 399 U.S. at 52 ("[T]he blue station wagon could have been searched on the spot . . . . The probable-cause factor still obtained at the station house[.]").  The district court properly denied appellant's motion to suppress the evidence discovered in the vehicle.

### III.  Statements Made to Law Enforcement Officers

Appellant next argues that the district court should have suppressed the post-arrest remarks he made to Drysdale after he learned that Houle and Story had located the hidden compartment. See supra at 5.  Appellant claims that the admission of his inculpatory remarks violated his rights under Miranda v. Arizona, 384 U.S. 436 (1965).  In his brief, appellant admitted that Agent

appellant's vehicle contained crack cocaine.

Story advised him of his _Miranda_ rights at the scene of the arrest, and that appellant affirmatively responded that he understood those rights.

In order for appellant to make out a claim under _Miranda_, however, his statements must have been the product of custodial interrogation. _Id._ at 444 ("[T]he prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."). The protections of _Miranda_ extend beyond actual questioning by the police to include the "functional equivalent" of interrogation, meaning "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." _Rhode Island_ v. _Innis_, 446 U.S. 291, 301 (1980).

Although Story and Houle did formally question appellant about the registration of the van, the agents ceased interrogation when appellant indicated he wanted to talk to his lawyer. Although Lopez remained in custody, any statement made "freely and voluntarily without any compelling influences is, of course, admissible in evidence," _Miranda_, 384 U.S. at 478. _See_ _Innis_, 446 U.S. at 299.

We see no indication that appellant's statements stemmed from custodial interrogation or its functional equivalent. Houle's

-11-

remark, although suggesting that the case against Lopez was strengthened by discovery of "the stuff," was not designed to elicit an incriminating response. Although our focus must be "primarily upon the perceptions of the suspect, rather than the intent of the police," Innis, 446 U.S. at 301, it is difficult to see how appellant could have construed a passing remark as the functional equivalent of interrogation. Indeed, Houle left the room immediately after making the comment, signaling to appellant that no response was sought.

In United States v. Genao, 281 F.3d 305 (1st Cir. 2002), we upheld the admission of a confession blurted out by the defendant in response to an officer's statement - in conjunction with a display of seized contraband - that "[w]e've got a problem here." See id. at 310. We reasoned that the remark was brief, not worded in a particularly confrontational manner, and, in the context of the ongoing search, intended simply to get the defendant's attention before reading him his rights. See id. at 311. Similarly, Houle's succinct remark simply highlighted information that appellant needed to know to convey to his attorney, who at that point was on his way to the station. Cf. United States v. Conley, 156 F.3d 78, 83 (1st Cir. 1998) ("A law enforcement officer's mere description of the evidence and of potential charges against a suspect . . . hardly can be classified as interrogatory.").

Because appellant's voluntary statements, though incriminating, were not the product of custodial interrogation, the district court properly denied the motion to suppress.[6]

## IV. **Alleged Prosecutorial Vouching**

Appellant contends that remarks in the prosecutor's opening and closing statements constituted vouching for an absent witness. No objection was made at trial and thus we review only for plain error. United States v. Newton, 327 F.3d 17, 26 (1st Cir. 2003).

The registered owner of the van, Bob Cole, was scheduled to testify on the final day of the trial. In his opening statement, the prosecutor mentioned that Cole would testify that he - Cole - never saw the van and did not have a valid driver's license. The night before his scheduled testimony, however, Cole was visited by a defense investigator. Although we do not know what was said to Cole, he was subsequently admitted to the hospital for mental

---

[6]After oral argument, counsel for appellant submitted a Rule 28j letter arguing that admission of appellant's remarks was barred by the Supreme Court's decision in Crawford v. Washington, 124 S.Ct. 1354 (2004). Under Crawford, certain testimonial hearsay is inadmissible "unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant," Horton v. Allen, 370 F.3d 75, 83 (1st Cir. 2004). However, for reasons similar to our conclusion that appellant's statements were not the product of custodial interrogation, the statements were also not testimonial in nature. The Supreme Court offered three general formulations of the "core class of testimonial statements," Crawford, 124 S.Ct. at 1364, namely, "ex parte in-court testimony or its functional equivalent," id., "extrajudicial statements . . . contained in formalized testimonial materials," id., and statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," id. Appellant's statements fall under none of these three formulations.

health reasons and was thus unavailable. In his closing statement, the prosecutor explained to the jury that Cole didn't testify "because we've established that even though his name is on the registration, Carlos Lopez kept that van."

The prosecution is not permitted to "tell the jury what witnesses who did not testify would have said had they testified," United States v. Palmer, 37 F.3d 1080, 1087 (5th Cir. 1994). Neither may the prosecution place the prestige of the government behind a witness nor implicitly vouch for a witness by indicating that the testimony is supported by information not presented to the jury. United States v. Martin, 815 F.2d 818, 821-22 (1st Cir. 1987).

We discern none of the above errors in the prosecutor's closing remarks. The prosecutor did not offer any indication of the substance of what Cole would have said, but instead simply clarified that other testimony proved that Lopez controlled the vehicle. The prosecutor pointed to evidence presented to the jury - the testimony of Tremblay regarding multiple drug transactions between her and Lopez in the van, the testimony of the mechanic who performed several thousand dollars worth of work on the car at Lopez' request - that proved the same point.

## V. **Denial of Motion for Judgment of Acquittal**

Appellant's final claim concerns the court's denial of his motion for judgment of acquittal under Fed. R. Crim. P. 29. Appellant's counsel did not submit a motion for acquittal following

-14-

the close of the government's evidence and, when asked by the judge whether he wished to do so at the conclusion of all the evidence, expressly declined. At the sentencing hearing on May 14, 2003 - three months after the jury was discharged - appellant offered a lengthy and detailed allocution. The court treated the allocution as a Rule 29 motion for acquittal, but then denied the motion.

Despite the district court's lenience, we conclude that the issue was waived by the appellant's failure to comply with the procedural requirements of Rule 29, which require the motion to be made by the defendant within seven days "after a guilty verdict or the court discharges the jury, whichever is later[.]" Fed. R. Crim. P. 29(a). Although the court may also "on its own consider whether the evidence is insufficient," it must do so before submission to the jury. Fed. R. Crim. P. 29(c); see also United States v. Davis, 992 F.2d 635, 638 (6th Cir. 1993) (concluding that the district court lacked authority to sua sponte enter a judgment of acquittal more than two months after the jury was discharged). We thus review appellant's claim only for "clear and gross injustice," United States v. Hadfield, 918 F.2d 987, 996 (1st Cir. 1990).

The record fails to reveal such unfairness. We only briefly recite the case against appellant, as there is little need for more extensive analysis. Information supplied by the confidential informant was corroborated during multiple surveillance operations involving Tremblay and appellant. The testimony regarding the five

-15-

surveilled drug transactions was consistent from all witnesses - including law enforcement agents, the confidential informant and Tremblay. Appellant was positively identified on multiple occasions. A hidden compartment in the van that was maintained and used by the appellant was found to contain drugs, as well as a gun with an obviously obliterated serial number, and photographs of appellant and his girlfriend, thus substantiating knowing possession. Appellant stipulated to his status as a convicted felon, thus supporting his conviction for being a felon in possession of a firearm. In short, we see no basis to disturb the verdict.[7]

Affirmed.

---

[7]Appellant submitted a pro se brief in which he argued that the initial arrest warrant was not supported by probable cause. Appellant raised the issue of the validity of the arrest warrant only during his allocution at the sentencing hearing. This belated effort fails to preserve the issue for review. It arguably should have been the subject of a pretrial motion, and, at a minimum, should have been raised in the district court at trial. See Fed. R. Crim. P. 12(b)(3)(A) (requiring that a motion alleging a defect in instituting the prosecution must be made before trial); United States v. Nee, 261 F.3d 79, 86-87 (1st Cir. 2001)("'Arguments not raised below will be entertained on appeal only in horrendous cases where a gross miscarriage of justice would occur and, in addition, where the newly asserted ground is so compelling as virtually to insure appellant's success.'")(quoting United States v. Haggert, 980 F.2d 8, 11 (1st Cir. 1992)). In any event, the argument is utterly without merit, whether it was forfeiture or not.