OPINION
AMBRO, Circuit Judge.
John Anthony Gonzalez, Jr.,[1] appeals the order of the District Court denying his motion to suppress physical evidence. He claims the Court erred by refusing to suppress evidence in light of two alleged deficiencies in the affidavit supporting the search warrant: (1) a lack of sufficient statements addressing the reliability of a dog sniff; and (2) statements in violation of Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). For the reasons below, we affirm the order of the District Court denying the motion to suppress.
I. Facts
On July 4, 2006, Philadelphia Police Officer Richard Martinez received information from an informant that large quantities of cocaine were being stored in locker J0819 at the Public Storage facility at 2700 Grant Avenue in Philadelphia. The informant provided detailed information about the packaging of the cocaine, stating that there were kilogram bricks inside two or more dark colored duffle bags stored inside the locker. The source stated that some kilograms were wrapped in tan color tape and others in foil. We note that these are details that can only be verified after execution of a search warrant. The informant also provided information regarding the purported owners of the cocaine. The source informed Officer Martinez that two Hispanic males, identified as David Rivera and Johnny Versace, were coming from Florida the next day to move the cocaine out of the storage locker to an unknown location. Officer Martinez shared his notes with the officer who eventually drafted the search warrant for the locker, Officer Brian Myers.
In response to this information, Officer Myers and others went to the Public Storage facility later that day. There, they verified the existence of a locker J0819, and upon talking to the employee on duty, learned that it had been rented by an individual using the name Daniel Rivera. This Daniel Rivera used an address in Fort Lauderdale, Florida. The officers also brought with them a photograph of a David Rivera fitting the description of the David Rivera identified by the informant. The employee, who apparently was new *836 and the only one on duty, did not recognize the individual in the photograph.
At the request of the officers on site, Officer Dispasquale and her trained drug detection dog, Tre, came to the storage facility and was exposed to locker J0819. Officer Dispasquale then notified Officer Myers that Tre “had a positive indication on storage locker J0819 for narcotics.” J.A. 96-97. Officer Myers returned to headquarters and prepared a search and seizure warrant for that locker. The affidavit, in its entirety, is reproduced below:
On 7-4-06 your affiant P/O Myers# 6657 received information from P/O Martinez # 1718. P/O Martinez stated that a source of information contacted the officer and stated that the Public Storage at 2700 Grant Ave. storage locker # J0819 within the last 24 hours is being used to store kilos of cocaine. The source stated that the kilos are inside a dark colored duffle bag. Some kilos are wrapped a tan color tape and some kilos are wrapped in foil. The source stated that there are 2 or more duffle bags inside the storage locker. The source stated that a H/M named Daniel Rivera along with another H/M named Johnny Versace were coming from Florida on 7-5-06 to move the kilos to an unknown location. P/O Myers and Cpl. Judge # 8027 then went to the employee at the Public Storage at 2700 Grant Ave. The employee confirmed that Daniel Rivera with an address of 925 SW 30th St. Ft. Lauder-dale, Florida was renting the storage locker. At this time Cpl. Judge then had K9 come to the Public Storage at 2700 Grant Ave. storage locker # J0819. P/O Dispasquale # 6742 and TRE # K549 arrived on location. TRE indicated POSITIVE on the door of the storage locker # J0819. P/O White # 4296 has a surveillance of the storage locker.
J.A. 48 (emphasis in original). There was no mention of the name “David Rivera,” and no mention of the attempt at a photo identification. This affidavit was presented to a Philadelphia County bail commissioner, and the search warrant was granted. That same evening, still July 4, officers returned to the locker and carried out the search warrant. They found 47.83 kilograms of cocaine inside the locker, packaged in duffle bags.
Gonzalez was later charged in a federal indictment with one count of possession with intent to distribute under 21 U.S.C. § 841(a)(1). He moved to suppress the evidence and also sought a hearing pursuant to Franks. The District Court held a hearing on Gonzalez’s motion.
At the hearing, Officer Myers testified that he had “mistakenly” switched the two similar names of “David” and “Daniel” when drafting the affidavit because the Public Storage employee used the name “Daniel,” as per the account record there. As to the failed identification by the Public Storage employee, Myers testified that he failed to include this information in the affidavit because the employee was new. He stated that he did ask to speak to another employee but there was no one else on duty because of the holiday. Myers testified that he had used dog sniffs over 50 times, but he did not have or attempt to acquire any information about the training of Tre, the canine, or Officer Dispasquale, the canine handler.
After the hearing, the District Court denied Gonzalez’s motion. It specifically rejected the Franks challenge and also declined to adopt a rule requiring the police to substantiate the dog’s reliability, training, and experience in the affidavit. Gonzalez later pled guilty to the indictment, reserving the right to appeal the District Court’s denial of the motion to *837 suppress physical evidence. After sentencing, he filed a timely appeal.
II. Jurisdiction and Standard of Review
The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.
In evaluating the District Court’s denial of the motion to suppress, we review for clear error as to the underlying facts, but exercise plenary review over the application of law to properly found facts. United States v. Riddick, 156 F.3d 505, 509 (3d Cir.1998) (citing United States v. Inigo, 925 F.2d 641, 656 (3d Cir.1991)). However, this does not mean that we are to second-guess a magistrate’s determination of sufficient evidence to support a finding of probable cause. In particular, the Supreme Court has recognized that affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation, and thus after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. Illinois v. Gates, 462 U.S. 213, 235-36, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A magistrate’s determination of probable cause should be paid great deference by reviewing courts. Id. (citing Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)).
We can affirm the denial of the suppression motion on any ground supported by the record. United States v. Agnew, 407 F.3d 193, 196 (3d Cir.2005). We apply the same deferential standard of review as the District Court to the issuing judicial officer’s decision to authorize the search and consider whether the judicial officer had a “substantial basis” for concluding that probable cause existed. United States v. Conley, 4 F.3d 1200, 1205 (3d Cir.1993) (quoting Gates, 462 U.S. at 238, 103 S.Ct. 2317).
III. Analysis
Gonzalez raises two interrelated claims. First, he claims that the lack of specific reliability statements in the affidavit concerning the dog sniff renders the sniff “meaningless” in the probable cause analysis. Second, he claims that the affidavit submitted in support of the application for a warrant was recklessly produced with erroneous assertions and omissions in violation of Franks. Because both claims ultimately go to the finding of probable cause, we will handle the claims in the following sequence: (1) the extent to which a dog’s training must be in the affidavit supporting an application for a warrant; (2) the first step of the Franks inquiry to determine what should have gone into the affidavit; and (3) whether the affidavit, as modified, provides a substantial basis for a finding of probable cause. We conclude that the District Court had a substantial basis for a finding of probable cause notwithstanding Gonzalez’s claims, and thus there is no need to consider the good faith exception under United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Thus, we affirm the District Court’s order denying the motion to suppress.
A. Dog sniff
Gonzalez urges us to hold that, absent specific facts in the warrant establishing a dog’s reliability, we cannot consider a positive dog sniff as part of the “substantial basis” for probable cause. We have never created such a rule, and decline to adopt one at this time. In addition, we need not decide whether such a rule would be appropriate where the sole fact leading to probable cause is the dog sniff. In this case, there was a tip that there were drugs in the locker where the canine alerted, and other facts in the probable cause assessment were corroborated.
*838 The affidavit in support of the search warrant stated that Officer Dispasquale, identified by badge number, brought a member of the police’s K9 unit, Tre, identified by K-number, to the facility. Tre indicated positive when exposed to the door of storage locker J0819. This corroborated the initial tip that there were drugs in the locker.
The purpose of the warrant requirement is not to deprive completely the Government of reasonable inferences, but only that they not be made by officers caught up in the heat of the investigation. The bail commissioner is entitled to make all reasonable inferences when reviewing an affidavit for a “substantial basis” to find probable cause. See Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (“The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.”). It thus was reasonable for the bail commissioner to infer that Tre, as a member of the K9 unit, had the training and reliability required to detect narcotics.[2] Thus, when the dog sniff is not the only element of probable cause, it is sufficient to identify the police canine by name and identification number, along with its handler by badge number.
We distinguish the case of United States v. Massac, 867 F.2d 174 (3d Cir.1989), because it did not address the issue of probable cause for a warrant. In that case, the question was whether an alert given by a trained and reliable dog, in conjunction with other known circumstances, provided probable cause to arrest the defendant without a warrant. Id. at 176. Furthermore, in Massac the training and reliability requirements were established after the fact. The dog was described as “ ‘K-9 Thor,’ a specially trained drug-sniffing dog.” Id. at 175. Because it was after the fact, the District Court in Massac was able to assess the canine’s specific behavior in finding the narcotics and conclude that the particular dog met the training and reliability requirements.
In the context of drug-tainted money, we have required some showing of reliability and training. United States v. $10,700.00 in U.S. Currency, 258 F.3d 215 (3d Cir.2001), concerned the probable cause necessary to sustain a forfeiture of suspected drug money, not about affidavits in support of search warrants. The hearing was held after the seizure, and we concluded that the Government needed to present some evidence concerning the particular dog’s training and accuracy in detecting narcotics on currency. Id. at 230. We noted that the key issue was whether the dog sniff would carry probative value in determining whether there was probable cause to tie the currency to a drug crime, justifying seizure. Id. We did not specifically confront a magistrate’s ability to make reasonable inferences about the dog’s training. A similar scenario arose in United States v. Carr, 25 F.3d 1194 (3d Cir.1994). There we upheld a conviction based upon the seizure of currency after a “trained” dog alerted. Id. at 1202 n. 3. *839 Again, there was no warrant involved requiring a magistrate’s reasonable inferences, and more importantly, there was no elaboration on the training in the record aside from the conclusory statement that the dog was “trained.”
While other circuit courts have required more, at this time we do not see a need to adopt such a rule. See, e.g., United States v. Lopez, 380 F.3d 538, 544 n. 4 (1st Cir.2004) (finding probable cause based upon showing of dog’s reliability at suppression hearing); United States v. Sanchez-Pena, 336 F.3d 431, 444 & n. 62 (5th Cir.2003) (same); United States v. Sundby, 186 F.3d 873, 876 (8th Cir.1999) (“To establish a dog’s reliability, the affidavit need only state the dog has been trained and certified to detect drugs.”); United States v. Lingenfelter, 997 F.2d 632, 639 (9th Cir.1993) (“A canine sniff alone can supply the probable cause necessary for issuing a search warrant if the application for the warrant establishes the dog’s reliability.”). While requiring a more detailed statement of training and reliability in the affidavit would facilitate the drawing of inferences by a neutral magistrate, the absence of such a statement does not preclude it. Furthermore, insofar as the concern is a lack of reliability or training, the affiant is obligated under Franks to disclose those concerns. Thus, the information concerning the dog sniff is properly in the affidavit, and may be considered by the bail commissioner to make a reasonable inference concerning the existence of probable cause.
B. Franks inquiry
Under Franks v. Delaware, a defendant is entitled to a hearing if he can make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and that the allegedly false statement is necessary to the finding of probable cause. 438 U.S. at 155-56, 98 S.Ct. 2674. To prevail, the defendant must demonstrate that what is false was either intentional or with reckless disregard by a preponderance of the evidence, and he must also demonstrate that, with the false material corrected, the affidavit’s content is insufficient to establish probable cause. Id.; United States v. Yusuf, 461 F.3d 374, 383 (3d Cir.2006). In such a case, the search warrant is voided and the fruits suppressed. Franks, 438 U.S. at 155-56, 98 S.Ct. 2674.
Gonzalez argues that two portions of the affidavit are subject to modification under Franks: (1) the mistaken use of “Daniel” instead of “David” concerning the tip; and (2) the omission of the attempt to get photo identification from the Public Storage employee. We distinguish between assertions and omissions for purposes of the Franks inquiry. Yusuf, 461 F.3d at 383.
For an assertion, even minor details can be stated with reckless disregard for the truth. Recklessness is measured not by the relevance of the information, but by the demonstration of willingness to distort truth affirmatively. Wilson v. Russo, 212 F.3d 781, 788 (3d Cir.2000). An assertion is made with reckless disregard for the truth when the affiant must have entertained serious doubts as to the truth of his statement or had obvious reasons to doubt the accuracy of the information he reported. Id. For an omission, we are concerned about giving neutral and detached magistrates the ability to draw reasonable inferences in order to avoid giving police the power to make unilateral decisions on the materiality of information. Id. at 787. An omission is made if an affiant withholds a fact within his knowledge that “any reasonable person would have known that this was the kind of thing the magistrate would *840 wish to know.” Id. at 788 (citation omitted).
1. Incorrect assertion of facts
The tip received by Officer Martinez and relayed to Officer Myers concerned two males: Johnny Versace and David Rivera. Myers located a photo of a David Rivera matching the description supplied by the tipster. He asked the Public Storage employee if he recognized the man in the photo. Yet, when the affidavit was written and shown to the bail commissioner, it referred to a Daniel Rivera, not David Rivera. Daniel Rivera was the name on locker J0819, but it was not the name relayed by the tip.
At the Franks hearing, Officer Myers testified that the name Officer Martinez gave him was David Rivera, and that the reference to Daniel Rivera in the affidavit was a mistake. The District Court concluded that the “error in the first name between David and Daniel is not fatal” because the “reference to ‘Daniel’ in the affidavit was a mistake,” not a deliberate misstatement rendering the warrant invalid. In so doing, the District Court credited Officer Myers’s testimony.[3]
Applying the standard of entertaining serious doubts as to the truth of the statement or having obvious reasons to doubt the accuracy of the information reported, it is likely that Officer Myers did not have obvious reasons to doubt the accuracy and made an innocent mistake of transposing two similar names. We need not decide this matter, however, because (as discussed below) even if it meets the standard of “reckless disregard for the truth,” the remedy is merely to correct the affidavit and substitute the name “David” for “Daniel” in the first instance. We believe there would still be a substantial basis for concluding that probable cause existed to search the locker.
2. Omission of facts
While Officer Myers failed in his attempt to secure an identification from employees at Public Storage, he did not include this information in his affidavit. At the hearing, he testified that the sole employee who looked at the photo was new. He furthered testified that there were no other employees available that day.
It is clear that a lack of positive photo identification is a fact that any reasonable person would know the bail commissioner wanted. Identifications and failed identifications can be highly relevant to a probable cause determination. It is also the case, however, that Officer Myers noted the fact that the employee was new. See United States v. Frost, 999 F.2d 737, 743 (3d Cir.1993) (considering both the omission and the officer’s explanation of why it was believed to be a neutral fact for the second step of the Franks inquiry). Because we take into account whether this was “a scheme to deceive the [bail commissioner] about a material fact” or “a desire to withhold a fact not material to the [bail commissioner]’s task,” we can properly consider the effect of the employee’s tenure on the materiality of the omission as well because it indicates that the omission was of a neutral fact. See id. at 743 n. 3 (citing United States v. Calisto, 838 F.2d 711, 715 (3d Cir.1988)).
*841 3. Remedy
When reviewing the evidence for a “substantial basis,” we will assume without deciding that we must correct the assertion, replacing the first instance of “Daniel” with “David.” Additionally, we will correct the omission and consider the fact that an employee did not recognize the picture of a David Rivera, but we also take note of the fact that the employee was new to the storage facility.
C. Probable cause
We now review the affidavit in support of the search warrant to determine whether there was a “substantial basis” for the bail commissioner’s finding of probable cause. In Illinois v. Gates, the Supreme Court reaffirmed the totality-of-the-cireumstances analysis that traditionally has informed probable cause determinations. Gates, 462 U.S. at 238-29,-103 S.Ct. 2317. The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Id. The duty of a reviewing court is simply to ensure that the magistrate had a “substantial basis” for concluding that probable cause existed. Id. Additionally, the Supreme Court has recognized there is much value to the corroboration of details of an informant’s tip by independent police work, and this corroboration can also provide a substantial basis. Id. at 242, 103 S.Ct. 2317.
Gates cited approvingly to Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), on the issue of corroboration. There, an informant reported that Draper would arrive in Denver on a train from Chicago on one of two days, and that he would be carrying a quantity of heroin. The informant also supplied a fairly detailed physical description of Draper, including a prediction that he would be wearing a light colored raincoat, brown slacks, and black shoes, and would be walking “real fast.” Police corroborated this information when they observed a man matching this description get off a train arriving from Chicago, walking rapidly while wearing attire matching the tip. Even though these were all facts consistent with innocent activity, the Supreme Court found this to be sufficient corroboration to justify a finding of probable cause because the sole material fact remaining to be verified was the presence of heroin. See Gates, 462 U.S. at 242-43, 103 S.Ct. 2317 (citing Draper, 358 U.S. at 309, 313-14, 79 S.Ct. 329). '
In this case, we find a similar set of corroborated facts when we consider the affidavit, including the Franks corrections. An informant notified police of a storage unit at Public Storage in Philadelphia that contained a large quantity of drugs in a specific locker, number J0819. He told officers that there were two males, one by the name of David Rivera, coming from Florida to retrieve the contraband the next day. They went to Public Storage with a photo of a David Rivera. There, they spoke with an employee, who informed them that a Daniel Rivera was renting the unit. The address of record was one from the State of Florida. When the employee was shown the photo of David Rivera, he could not make an identification. This employee, however, was new, and was the only one on duty at the time. Officers called a canine unit, and a trained dog, identified by number, and his handler arrived at the scene. When the dog was by locker J0819, he indicated positive for the presence of drugs.
These are the relevant facts that would have been before the bail commissioner but for the alleged Franks error. Like *842 Draper, there were specific, corroborable facts provided that were consistent with innocent activity. The specific storage locker J0819 at the specific Public Storage was registered to a name very similar to the name given by the informant. Moreover, the address of record for the locker was in Florida, the very State where the informant claimed the two men would be coming from. Going further than Draper and well beyond innocent facts, there was an indication that there were drugs present, namely, the positive dog sniff at the locker in question. Thus, under Gates and Draper, there was certainly a “substantial basis” for concluding that probable cause existed, even taking the Franks issues into consideration.
* * * * * *
Because the affidavit in support of the warrant, taking into account all of the alleged defects, provided a substantial basis for concluding that probable cause existed, we affirm the decision of the District Court.

. While docketed as “Gonzalez,” all of Appellant’s moving papers use "Gonzales.” We will use the name as docketed.

. This is not to say that a defendant would be without remedy if the dog was, in fact, unreliable or had no track record of reliability. In such a case, an affidavit that did not disclose known facts, thus calling the dog's reliability into question, would be subject to analysis under Franks for a material omission. This could result in suppression of the evidence seized because the bail commissioner would have wanted to know that information before deciding which inferences were reasonable to make.

. We note that the similarity between the names “David” and “Daniel” was sufficiently confusing so as to result in an error in the District Court's own order regarding the Franks issue. The District Court mistakenly transposed “David” and “Daniel” in the following sentence: "Defendant's brief makes mention of the fact that the affidavit for the search warrant refers to a Daniel Rivera, whereas the name of the individual renting the locker was David Rivera, but the name of the defendant is Daniel Rivera.” The name of the person renting the locker was Daniel Rivera, but the person whom Officer Myers was tipped to was David Rivera.