UNITED STATES of America, Appellee,

v.

David C. WHITE, Defendant, Appellant.

No. 96–2076.

United States Court of Appeals,
First Circuit.

Heard June 3, 1997.

Decided June 24, 1997.

John A. Ciraldo, with whom Perkins, Thompson, Hinckley & Keddy, P.A., Portland, ME, was on brief, for appellant.

Margaret D. McGaughey, Assistant United States Attorney, with whom Jay P. McCloskey, United States Attorney, and Jonathan A. Toof, Assistant United States Attorney, Portland, ME, were on brief, for appellee.

Before SELYA, Circuit Judge, CYR, Senior Circuit Judge, and BOUDIN, Circuit Judge.

SELYA, Circuit Judge.

Defendant-appellant David C. White wants to regain his interest in a parcel of real estate known as "the Farm." The government seized White's interest in this tract after he and several others pled guilty to charges that they collogued to distribute marijuana. White acknowledges that his coconspirators used the Farm to carry out the conspiracy's nefarious objectives, but he insists that the government cannot seize his interest in the property without first showing that he *personally* used it to further the illicit activity.

This is an argument which requires red meat and strong drink, but the appellant offers little in the way of sustenance for it. Consequently, we reject his theory and instead hold that the nexus between White's involvement in the marijuana conspiracy and his coconspirators' use of the Farm permits forfeiture.

## I. BACKGROUND

White was indicted along with several others for conspiring to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846. The same indictment sought criminal forfeiture of the Farm pursuant to 21 U.S.C. § 853. White pled guilty to the conspiracy count and waived his right to a jury trial on the forfeiture count. In conjunction with this waiver, the parties stipulated to the facts underlying the forfeiture count. We summarize these facts.

The Farm is located in Mansfield, Massachusetts. White inherited his interest in it from his mother. He owns an undivided one-fourth interest, as does each of his three siblings. During the course of the conspiracy, White did not live on the Farm, but he knew that his sister and coconspirator, Rebecca White, resided there with another coconspirator, Gary Dethlefs. White also was cognizant of the fact that Rebecca and Gary were using the Farm to facilitate the business of the conspiracy. Although White did not attempt to prevent his coconspirators from storing drugs on the Farm, he never personally conducted illicit activities in that venue.

After the district court adjudicated White's guilt, White filed a motion for judgment, asseverating that forfeiture is improper when there is no proof that the defendant/property owner personally used the targeted property to carry out criminal activity. The district court rejected White's "personal use" argument and denied his motion. *See United States v. Dethlefs*, 934 F.Supp. 475 (D.Me. 1996). Shortly thereafter, the court entered an order of forfeiture. This appeal followed.

Because this matter does not implicate factual disputes, but only requires us to assay the appellant's legal theory by resort to the drug-trafficking forfeiture statute, 21 U.S.C. § 853, our review is plenary. *See United States v. Pitrone*, 115 F.3d 1, 3–4 (1st Cir.1997); *United States v. Gifford*, 17 F.3d 462, 472 (1st Cir.1994).

## II. PRINCIPLES AFFECTING CRIMINAL FORFEITURE

The applicable statute, which permits the government to seize drug-related property, provides in pertinent part that any person who is convicted of a federal felony drug violation

shall forfeit to the United States, irrespective of any provision of State law—

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or

part, to commit, or to facilitate the commission of, such violation....

21 U.S.C. § 853(a) (1994). This statute contemplates both "property obtained" and "property used" forfeitures; that is, it allows the government to confiscate a criminal defendant's property where the property either is the fruit of drug-related criminal activity or has been used to further drug-related criminal activity.

The legislative history of section 853 is significant. Congress enacted the statute as part of the Comprehensive Crime Control Act of 1984. *See* Act of Oct. 12, 1984, Pub.L. No. 98–473, 1984 U.S.C.C.A.N. (98 Stat. 1837). Congress expressed high hopes for this legislation, intending it as a vehicle "to make major comprehensive improvements to the Federal criminal laws." S.Rep. No. 98–225, at 1 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3184. To bolster federal crime prevention efforts, Congress "enhance[d] the use of forfeiture, and, in particular, the sanction of criminal forfeiture, as a law enforcement tool in combating two of the most serious crime problems facing the country: racketeering and drug trafficking." *Id.* at 3374.

■ To implement these sentiments, Congress expanded the preexisting Racketeer Influenced and Corrupt Organizations (RICO) forfeiture provision, embodied in 18 U.S.C. § 1963, and simultaneously created the drug-related forfeiture provision now codified in section 853. Congress took pains to note that "[t]he provisions of this new criminal forfeiture statute for major drug offenses closely parallel those of the [amended] RICO forfeiture provisions...." *Id.* at 3381. Since then, courts consistently have construed the RICO forfeiture statute, 18 U.S.C. § 1963, and the statute governing drug-related forfeitures, 21 U.S.C. § 853, in *pari passu. See United States v. McHan,* 101 F.3d 1027, 1042 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2468, 138 L.Ed.2d 223 (1997); *United States v. Libretti,* 38 F.3d 523, 528, n. 6 (10th Cir.1994), *aff'd,* —— U.S. ——, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995); *United States v. Bissell,* 866 F.2d 1343, 1348 n. 3 (11th Cir.1989); *United States v. Benevento,* 663 F.Supp. 1115, 1118 n. 2 (S.D.N.Y.

1987), *aff'd per curiam,* 836 F.2d 129 (2d Cir.1988). We join these courts in holding that case law under 18 U.S.C. § 1963 is persuasive in construing 21 U.S.C. § 853, and vice versa.

■ The Supreme Court has held that criminal forfeiture is less a substantive offense and more an element of the offender's sentence. *See Libretti,* —— U.S. at ——, 116 S.Ct. at 363. For this reason, criminal forfeitures do not engender the same procedural protections as do felony charges simpliciter. *See id.* at ——, ——, 116 S.Ct. at 364, 367. This does not mean, however, that the government can forfeit assets for the asking. One restriction is that " § 853 limits forfeiture by establishing a factual nexus requirement: Only drug-tainted assets may be forfeited." *Id.* at ——, 116 S.Ct. at 364. Put more precisely, criminal forfeiture is not permissible under section 853 unless the government establishes a connection between the forfeited property and the defendant's criminal conduct.

The exact dimensions of this nexus requirement are largely uncharted. In *United States v. Desmarais,* 938 F.2d 347 (1st Cir. 1991), government officials effected a "property used" forfeiture and seized the defendant's house pursuant to section 853(a)(2). On appeal, the defendant claimed that the district court had erred in instructing the jurors anent the connection between the seized property and the defendant's criminal conduct. Without venturing to delineate the contours of the necessary connection, we held that the jury instructions were adequate and that the facts sufficiently established the requisite nexus between the defendant's (forfeited) dwelling and his criminal misconduct. *Id.* at 353 (mentioning that narcotics had been mailed to the house and that officers had discovered drug paraphernalia therein). We acknowledged, however, that "[w]e have yet to define the degree of interrelatedness required to support a criminal forfeiture under 21 U.S.C. § 853(a)(2), nor has any other court done so to our knowledge." *Id.*

## III. ANALYSIS

■ White posits that, in this case, forfeiture is proper only if there is a watertight

nexus between the Farm and his criminal conduct and that, therefore, the government must show that he personally used the Farm to commit the conspiracy. He relies upon two distinctions in forfeiture law to support this construct. First, he points out that although civil forfeiture is a proceeding against the property, criminal forfeiture is a proceeding against the person. This distinction, according to the appellant, highlights the criminal law's traditional focus on individual culpability. Second, he hypothesizes that a "property used" forfeiture is distinguishable from a "property obtained" forfeiture in that the former requires a showing of criminal use. The appellant then adds these two distinctions together, like numbers in an equation, to produce the desired sum: the supposed requirement that the government must show that he personally used the Farm to conduct illegal activity.

We agree with the appellant's two premises, and we recognize the distinctions that he delineates. We disagree, however, with his conclusion because we believe that these distinctions, severally and in combination, fail to make a material difference in the outcome of this case. In short, the appellant's equation is out of balance.

■ Courts have declined to bootstrap into the appellant's first distinction—criminal versus civil—the proposition that a criminal forfeiture proceeding must be viewed through a highly individualized lens. In the context of "property obtained" forfeitures, for example, several courts of appeals have refused to limit criminal forfeiture to proceeds defendants personally obtained and have held defendants jointly and severally liable for the proceeds obtained by their co-conspirators. *See McHan*, 101 F.3d at 1043 (holding that section 853(a)(1) forfeiture "is not limited to property that the defendant acquired individually but includes all property that the defendant derived indirectly from those who acted in concert with him in furthering the criminal enterprise"); *United States v. Masters*, 924 F.2d 1362, 1370 (7th Cir.1991) (holding RICO defendant jointly and severally liable for proceeds obtained by his coconspirators, noting that each member of the conspiracy "is fully liable for the receipts of the other members of the enterprise"); *United States v. Caporale*, 806 F.2d 1487, 1506 (11th Cir.1986) (holding that the "imposition of joint and several liability in a forfeiture order upon RICO co-conspirators is not only permissible but necessary ... to effectuate the purpose of the forfeiture provision"); *see also United States v. Wilson*, 742 F.Supp. 905, 909 (E.D.Pa.1989) (holding that "there is no bar to the imposition of joint and several liability on a RICO forfeiture verdict, and ... imposition of joint and several liability [is] consistent with the statutory scheme"), *aff'd*, 909 F.2d 1478 (3d Cir.1990) (table); *Benevento*, 663 F.Supp. at 1118 (applying the doctrine of joint and several liability to a section 853(a)(1) forfeiture).

This court adopted the same approach in *United States v. Hurley*, 63 F.3d 1 (1st Cir. 1995), *cert. denied*, — U.S. —, 116 S.Ct. 1322, 134 L.Ed.2d 474 (1996), a RICO forfeiture case in which we refused to limit forfeiture to ill-gotten gains personally obtained. In holding the defendant jointly and severally liable for all the illicit profits procured by means of the conspiracy and reasonably foreseeable to the defendant, we reasoned that:

> Under established case law, members of a conspiracy are substantively liable for the foreseeable criminal conduct of the other members of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Using the same concept, the Sentencing Guidelines attribute to a defendant at sentencing the foreseeable conduct of co-conspirators. U.S.S.G. § 1B1.3(a)(1)(B). It would be odd ... to depart from this principle of attributed conduct when it comes to apply the forfeiture rules, which have aspects both of substantive liability and of penalty.

*Id.* at 22. Thus, contrary to the appellant's assertion, traditional notions of criminal law do not preclude courts from holding defendants in forfeiture proceedings liable for their coconspirators' behavior. *See McHan*, 101 F.3d at 1043; *Caporale*, 806 F.2d at 1508. Consequently, the appellant's first distinction drops from his equation.

■ White's second distinction likewise fails to support his "personal use" argument. There is simply no analytical grounding for

the proposition that "property used" forfeiture requires a showing that defendant personally used the property for illicit reasons when, as the appellant concedes, "property obtained" forfeitures do not require a similar showing. The *Pinkerton* principle, *see Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), is equally applicable to both subsets of criminal forfeiture. Moreover, the plain language of the "property used" forfeiture, 21 U.S.C. § 853(a)(2), simply does not direct a court to find that a defendant personally used the property to commit the underlying crime. We would usurp Congress' power were we gratuitously to read such a restriction into the statute. This is especially true because Congress explicitly warned the federal courts not to construe section 853 grudgingly. *See* 21 U.S.C. § 853(*o*) ("The provisions of this section shall be liberally construed to effectuate its remedial purpose.").

 In fine, the sum of the appellant's arguments is no more than the sum of its parts—and that adds up to very little in the context of this case. White cites no apposite authority for his views,[1] and neither of his proffered distinctions, standing alone or added together, support his vision of a "personal use" requirement for "property used" forfeitures. By its terms, section 853(a)(2) requires only that the defendant be convicted of a drug-trafficking offense and that 'his property be used to facilitate the commission of that offense. These requirements are fully satisfied in White's case.

## IV. CONCLUSION

We need go no further. Forfeiture under section 853, whether of the "property obtained" or the "property used" variety, requires a court to find a nexus between the targeted property and the defendant's underlying criminal activity. This nexus exists here inasmuch as the appellant owned an interest in the property that his coconspirators, to his knowledge and with his tacit acquiescence, used in facilitating the business of the marijuana conspiracy. *See generally Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The law simply does not require the government to show, as a precondition to criminal forfeiture, that White personally used the Farm to conduct illicit activity.

*Affirmed.*

---

1. White cites *United States v. Ragonese*, 607 F.Supp. 649 (S.D.Fla.1985), *aff'd*, 784 F.2d 403 (11th Cir.1986), for the proposition that a coconspirator's use of a defendant's property is insufficient to justify its forfeiture. The *Ragonese* court made no such holding. There, the government sought to establish a nexus between the seized property (an apartment complex) and the substantive RICO violation by proving that a coconspirator dealt drugs from units within the apartment·complex. *See id.* at 652. The defendant, however, was outraged by this activity as it tended to lower property values. *Id.* The court refused to order forfeiture, reasoning that the requisite nexus between the targeted property and the underlying criminal conduct does not exist where the defendant/property owner disapproves of, and attempts to curtail, his coconspirator's use of the property to conduct criminal activity. *See id.* at 651–52. This case, in which White acquiesced complacently in his coconspirators' use of the Farm, stands in vivid contrast to *Ragonese*.