# United States Court of Appeals
## For the First Circuit

No. 07-2376

UNITED STATES OF AMERICA,

Appellee,

v.

SEAN BUCCI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Morris E. Lasker, U.S. District Judge]

Before

Howard, Selya, and Ebel,[*]
Circuit Judges.

Kimberly Homan for appellant.
Sangita K. Rao, Attorney, Criminal Division, Appellate Section, United States Department of Justice, with whom Michael J. Sullivan, United States Attorney, and Peter K. Levitt, Assistant United States Attorney, were on brief for appellee.

September 11, 2009

[*] Of the Tenth Circuit, "sitting by designation".

**EBEL**, <u>**Circuit Judge**</u>.  In this direct criminal appeal, Sean Bucci challenges his sixteen convictions for drug trafficking, money laundering and tax evasion, his resulting 151-month prison sentence, and a forfeiture order.  Having jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we AFFIRM.

## I.  BACKGROUND

The evidence presented at trial established that Bucci's co-defendant Anthony Belmonte sold Bucci approximately 300 to 350 pounds of marijuana eight or nine times each year, over the course of three and one-half years.  Following a nine-month investigation, the United States charged Bucci with sixteen counts of drug trafficking, money laundering and tax evasion.  At trial, Bucci acknowledged that he was a marijuana dealer, but disputed the amount of marijuana with which he was charged.  The jury found Bucci guilty on all sixteen charges and specifically found that the charged drug-trafficking conspiracy involved over 1,000 kilograms of marijuana.  The jury also returned several special

forfeiture verdicts against Bucci.[1]  The district court then sentenced Bucci to 151 months in prison.

## II.  DISCUSSION

### A.  Challenges to the indictments

#### 1.  Vindictive prosecution

The United States initially indicted Bucci, along with Belmonte and another co-defendant, Darren Martin, on two drug-trafficking charges: 1) conspiring to possess at least 100 kilograms of marijuana with the intent to distribute, in violation of 21 U.S.C. § 846; and 2) possessing at least 100 kilograms of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii).  The indictment also charged that any of Bucci's property that represented proceeds from his drug-trafficking offenses was forfeitable under 21 U.S.C. § 853.

A year later, in August 2004, Bucci started a website, whosarat.com, where individuals could post information about government informants.  Six months after Bucci started this website, the Government, on February 3, 2005, filed a superseding indictment which charged only Bucci and Martin

---

[1]Specifically, the jury found $2 million forfeitable as drug proceeds, and $700,000 forfeitable as part of Bucci's money laundering conspiracy.  In addition, the jury found that Bucci's home, vehicle, boat, and the funds in three of his bank accounts and an investment account should all be forfeited.

with the same two drug-trafficking counts, but increased the amount of marijuana charged in the alleged conspiracy from 100 to at least 1000 kilograms. The increased amount of marijuana charged raised the statutory mandatory minimum sentence Bucci faced for the conspiracy offense, if convicted, from five to ten years. See 21 U.S.C. § 841(b)(1)(A)(vii).

A year after Bucci started whosarat.com, the Government, on July 28, 2005, filed a second superseding indictment charging Bucci with the same two drug-trafficking offenses, but adding fourteen additional counts involving money laundering, tax evasion, and unlawfully structuring financial transactions to avoid reporting requirements. The second superseding indictment also added Bucci's mother, Catherine Bucci, as a co-defendant.

Bucci claims that the Government's decision to file the two superseding indictments in his case—which increased the number of charges against him from two to sixteen and the amount of marijuana charged in the alleged drug-trafficking conspiracy from 100 to at least 1,000 kilograms—amounted to vindictive prosecution intended to punish him for exercising his First Amendment right to operate his website,

whosarat.com.[2] Bucci sought to prove vindictive prosecution by demonstrating circumstances establishing a likelihood of vindictiveness sufficient to create a presumption that the prosecution was, in fact, acting vindictively. See United States v. Jenkins, 537 F.3d 1, 3 (1st Cir. 2008), cert. denied, 129 S. Ct. 433 (2008). It is difficult to make such a showing pretrial, however, in light of the broad discretion afforded the prosecutor to determine who should be prosecuted and for what crime, and the presumption that the prosecutor has exercised that discretion in good faith.[3]

---

[2]The Government does not dispute that Bucci's website enjoys First Amendment protection. We therefore assume, without deciding, that that is so. See United States v. Carmichael, 326 F. Supp. 2d 1267, 1270 (holding similar website "constitutes protected speech"), supplemented by 326 F. Supp. 2d 1303 (M.D. Ala. 2004).

[3]In contrast to a pretrial claim of vindictive prosecution, like the one presented here, the Supreme Court has recognized that the Government's decision to increase the charges brought against a defendant after he has once been convicted may more readily create a presumption of vindictiveness:

> [O]nce a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the [Government] has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

United States v. Goodwin, 457 U.S. 368, 381 (1982).

- 5 -

See United States v. Goodwin, 457 U.S. 368, 377, 380-81 (1982); cf. United States v. Armstrong, 517 U.S. 456, 464-65 (1996) (discussing presumption in context of selective-prosecution claim).

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation so long as the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.

Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) (quotation, citation, alteration, footnote omitted).

### a. Denial of Bucci's discovery request

In the district court, Bucci sought discovery from the Government in order to support his vindictive-prosecution claim. The district court denied that request. We review that decision for an abuse of discretion. See United States v. Lewis, 517 F.3d 20, 23 (1st Cir. 2008) (reviewing selective-prosecution claim).

### i. Applicable standard

In light of the presumption that a prosecutor has acted in good faith in exercising his discretion to make charging decisions, courts require a defendant seeking discovery

- 6 -

first to come forth with "some" objective evidence tending to show the existence of prosecutorial vindictiveness. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Wilson</u>, 262 F.3d 305, 315 (4th Cir. 2001); <u>United States</u> v. <u>Sanders</u>, 211 F.3d 711, 717 (2d Cir. 2000). These courts derive this standard from <u>United States</u> v. <u>Armstrong</u>, <u>see</u> 517 U.S. at 468, in which the Supreme Court addressed discovery sought in support of a selective-prosecution claim. <u>See</u> <u>Wilson</u>, 262 F.3d at 315-16; <u>Sanders</u>, 211 F.3d at 717. This is the standard that the district court applied in Bucci's case, and we adopt it here.

### ii. Whether Bucci made such a showing here

In order to obtain discovery, then, Bucci first had to advance some evidence tending to establish his vindictive-prosecution claim. He failed to do so.

In support of his discovery motion, Bucci relied on "the statements of law enforcement and government officers reporting whosarat.com contained in . . . newspaper articles, documents, and security reports." While the reported statements of these officers expressed serious concern about the danger to informants posed by postings made on Bucci's website, Bucci set forth no evidence suggesting that this concern ever affected the prosecutors making the specific charging decisions in his case. To

obtain discovery, Bucci must do more than simply "identify a potential motive for prosecutorial animus." Sanders, 211 F.3d at 718. He must connect any vindictive animus to those making the challenged charging decisions in his case. See United States v. Goulding, 26 F.3d 656, 662 (7th Cir. 1994).

Bucci also relied on evidence regarding the Government's opposition to a pretrial motion Bucci's co-defendant, Catherine Bucci, filed in this case seeking early disclosure of statements made by Government witnesses. In opposing that request, the Government noted that, while it generally would not oppose early disclosure, in this case it would not agree to it because of the Government's concern that Bucci was trying to intimidate Government witnesses through whosarat.com. In opposing Catherine Bucci's motion, however, the Government was only asserting a legitimate litigation strategy. The fact that it was based in part on the effects the information posted on Bucci's website might have on this specific prosecution did not suggest that prosecutors filed the superseding indictments against Bucci to retaliate against him for operating the website. See United States v. Segal, 495 F.3d 826, 833 (7th Cir. 2007) ("A prosecutor cannot be said to act vindictively by taking into account a defendant's perceived efforts to intimidate witnesses.").

In support of his discovery request, Bucci further relied on the general circumstances attendant to his prosecution, asserting that the prosecutor all along had enough evidence to charge him with the added offenses and increased amount of marijuana, but did not bring those charges until after Bucci started whosarat.com. Assuming that the Government had enough evidence to indict Bucci initially on the increased charges, this fact alone is insufficient to establish that the Government later filed the superseding indictments to punish Bucci for whosarat.com. See United States v. Roach, 502 F.3d 425, 444-45 (6th Cir. 2007) (rejecting argument that the fact that the Government could have brought charges initially, but did not do so, indicated the prosecutor's vindictiveness), cert. denied, 128 S. Ct. 2051 (2008).

Moreover, "evidence of suspicious timing alone does not indicate prosecutorial animus." United States v. Cooper, 461 F.3d 850, 856 (7th Cir. 2006) (quotations omitted). In any event, the district court noted that "the sequence of events in this case is not so remarkable as to justify discovery." We agree. Bucci began operating his website in August 2004. It was six months later that the Government filed the first superseding indictment, and another six months before the Government filed the second superseding

- 9 -

indictment against Bucci. These superseding indictments were not so close in time to Bucci's starting the whosarat.com website to provide strong evidence that the prosecutor acted vindictively. See United States v. Marrapese, 826 F.2d 145, 147 (1st Cir. 1987) (noting two events that were "well removed in time" were not strong evidence of actual vindictiveness).

For all of these reasons, we cannot conclude that the district court abused its discretion in denying Bucci discovery in support of his vindictive-prosecution claim.

### b. Denial of motion to dismiss indictment

Despite not being able to conduct discovery, Bucci nevertheless moved for the dismissal of the second superseding indictment, asserting that it was the result of vindictive prosecution. The district court denied Bucci's motion. We review that decision for an abuse of discretion. See United States v. Poole, 407 F.3d 767, 772 (6th Cir. 2005). But in applying this deferential standard, we review any ancillary factual findings for clear error and relevant legal determinations de novo. See United States v. Aviles-Sierra, 531 F.3d 123, 126 (1st Cir. 2008). We agree with the Government that the "subsidiary question" presented here, whether Bucci established a presumption of vindictiveness, is a legal determination that we should

review de novo.  See United States v. Barner, 441 F.3d 1310, 1315 n.5 (11th Cir. 2006); Wilson, 262 F.3d at 316.

Bucci argues that he presented evidence to the district court sufficient to establish a presumption of vindictiveness and shift the burden to the prosecution to show it had legitimate reasons for increasing the charges against him.  We reject that argument, for the same reasons discussed above.

## 2.    Denial of motion to dismiss Count 5 as time-barred

Bucci moved for the dismissal of the second superseding indictment's fifth count, arguing that it was time-barred. Because the pertinent facts are undisputed, this court reviews de novo the district court's decision to deny that motion.  See United States v. DeLeon, 444 F.3d 41, 51 (1st Cir. 2006).

The relevant statute of limitations, 18 U.S.C. § 3282(a), provides that "[e]xcept as otherwise provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."  Ordinarily the limitation period begins to run when the crime is complete, see Toussie v. United States, 397 U.S. 112, 115 (1970), and the parties do not argue otherwise here.

The fifth count of the second superseding indictment charged that Bucci,

> [o]n or about July 28, 2000 . . . did knowingly and intentionally engage in a monetary transaction in property derived from specified unlawful activity-to wit: the deposit of approximately $222,179.88 into his Checking Account . . . at First Massachusetts Bank . . . with proceeds derived from the sale of controlled substances.
>
> All in violation of Title 18, United States Code, Section 1957.[4]

The Government filed the second superseding indictment on July 28, 2005, exactly five years to the day after the charged offense. But the parties agree that Bucci actually submitted the deposit at issue to the bank after 2:30 p.m. on July 27, 2000. The bank did not credit that deposit to

---

[4] 18 U.S.C. § 1957 provides, in relevant part, that

(a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

. . . .

(f) As used in this section —

(1) the term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds . . . by, through, or to a financial institution . . . , but such term does not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution.

Bucci's account until the next business day, July 28. The question presented in this case, then, is when was this charged offense complete: when Bucci submitted the deposit on July 27 or when the bank credited Bucci's account on July 28. The parties do not cite, and we have not found, any authority addressing this exact question.

In resolving this question, we look to the relevant language of § 1957(a). The statute proscribes knowingly engaging in a monetary transaction. The transaction at issue here was the deposit of funds. Pursuant to the express terms of the bank's policy, of which the bank informed Bucci, a submission of funds to the bank after 2:00 p.m. would not be deposited into the depositor's account until the following business day. Thus, Bucci did not "engage" in this monetary transaction until July 28, 2000, and the indictment charging this offense was, therefore, timely filed.

## B.    Fourth Amendment issues

Bucci claims that law enforcement officials violated the Fourth Amendment by 1) conducting almost constant surveillance of his home using a video camera; and 2) stopping his vehicle without probable cause. The district court denied Bucci's motion to suppress asserted on these grounds. In considering the district court's decision

to deny a suppression motion, this court reviews legal questions de novo and any factual findings for clear error. See United States v. McMullin, 568 F.3d 1, 5 (1st Cir. 2009), petition for cert. filed, (U.S. Aug. 24, 2009) (No. 09-6112).

**1.  Video surveillance of Bucci's residence**

Law enforcement authorities installed a video camera on a utility pole across the street from Bucci's home and conducted surveillance of the front of his house for eight months.  "The camera was placed in a fixed location that enabled agents to monitor activity on the driveway [and] afforded agents a view of the garage" door and inside the garage when the door was open.  "The video camera had no remote capabilities that allowed agents to either change the view or magnification of the camera without being physically at the scene."

Before a court can address the merits of a motion to suppress, see United States v. Rodriguez-Lozada, 558 F.3d 29, 37 (1st Cir. 2009), petition for cert filed, (U.S. May 19, 2009) (No. 09-5537), the defendant must first establish that his own Fourth Amendment rights were violated by showing that he had a reasonable expectation of privacy in

the place searched.[5]  See United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009), petition for cert. filed, (U.S. June 18, 2009) (No. 08-11022).  To establish such an expectation of privacy, Bucci must show that 1) he "has exhibited an actual, subjective expectation of privacy" in the area searched; and 2) "such subjective expectation is one that society is prepared to recognize as objectively reasonable." Id. (citing Smith v. Maryland, 442 U.S. 735, 740 (1979)).

Bucci has failed to establish either a subjective or an objective expectation of privacy in the front of his home, as viewed by the camera.  We focus here only on the lack of a reasonable objective expectation of privacy because this failure is so clear.  See United States v. Vilches-Navarrete, 523 F.3d 1, 14 (1st Cir. 2008), cert. denied, 129 S. Ct. 208 (2008).  "There are no fences, gates or shrubbery located in front of [Bucci's residence] that obstruct the view of the driveway or the garage from the street.  Both [are] plainly visible."  An individual does not have an expectation of privacy in items or places he exposes to the public.  See Katz v. United States, 389 U.S.

---

[5]Although courts often refer to this inquiry as a question of standing, it is more appropriately treated as a substantive Fourth Amendment legal question.  See United States v. Rheault, 561 F.3d 55, 58 n.8 (1st Cir. 2009), petition for cert. filed, (U.S. June 18, 2009) (No. 08-11022).

347, 351 (1967) ("[T]he Fourth Amendment protects people, not places.  What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); see also California v. Ciraolo, 476 U.S. 207, 213 (1986).  That legal principle is dispositive here.  See Kyllo v. United States, 533 U.S. 27, 31-33 (2001) (noting lawfulness of unenhanced visual surveillance of a home).

## 2.  Search of Bucci's vehicle on June 4, 2003

Bucci also moved to suppress over three hundred pounds of marijuana that officers found in Bucci's vehicle when they pulled him over on June 4, 2003, alleging the officers did not have probable cause to stop him at that time.  "If there is probable cause to believe a vehicle contains evidence of criminal activity," officers may, without a warrant, search "any area of the vehicle in which the evidence might be found."  Arizona v. Gant, 129 S. Ct. 1710, 1721 (2009).  To prove "the applicability of this exception to the warrant requirement," United States v. Dickerson, 514 F.3d 60, 66 (1st Cir. 2008), cert denied, 128 S. Ct. 1690 (2008), "the government must demonstrate that law enforcement officers had a belief, reasonably arising out of circumstances known to the seizing officer, that the vehicle contained that which by law is subject to seizure," United

States v. Lopez, 380 F.3d 538, 543 (1st Cir. 2004) (quotation, alterations omitted). Whether a particular set of facts rises to the level of probable cause is a legal determination that this court reviews de novo. See United States v. Rodrigue, 560 F.3d 29, 32 (1st Cir. 2009).

Here, at the time officers stopped and searched Bucci's vehicle, they knew the following: A confidential informant told officers that Bucci was involved in marijuana trafficking. Over the next eight months, officers themselves observed what appeared to be deliveries being made to Bucci's home through vehicles driven into his garage and unloaded out of public view. After these deliveries, officers would find empty boxes and bags in Bucci's garbage which contained marijuana residue. Soon thereafter, a number of individuals would come to Bucci's home, take other boxes or bags from the house, and depart in short order.

On June 2, 2003, the confidential informant told agents that "Bucci might have recently received a shipment of marijuana."

> On the morning of June 4, 2003, the pole camera showed Bucci and another man — later identified as defendant Belmonte — carrying eight large cardboard boxes (similar to the size and construction to those seized during the garbage searches) into the garage of Bucci's residence. Once the boxes were in the garage, the door was closed, and Bucci and Belmonte remained inside the residence for approximately two hours. . . .

- 17 -

Belmonte and Bucci eventually emerged from the garage carrying a box which appeared to be very heavy.  The two walked towards [Belmonte's] trailer and returned to the garage empty handed.  Within minutes, Belmonte exited the garage, got into the pick-up truck with the trailer attached, and drove off.

Thereafter, "[a]gents ordered police officers to stop the vehicle driven by Belmonte."[6]

While Belmonte was being stopped by police, another man pulled into Bucci's driveway.  Bucci came out of the house, and the driver of the vehicle — later identified as Defendant Martin — parked the vehicle, and entered the residence with Bucci.  Moments later, Bucci and Martin came out of the residence and got into their respective vehicles.  Martin moved his vehicle so that Bucci could drive his vehicle out of the garage, and Martin immediately drove his vehicle into the garage, and the garage door was closed.  Several minutes later, Bucci drove his vehicle into the garage.  Bucci reentered the garage, and the garage door was closed again.  A few minutes later, Bucci and Martin came out of the garage and drove away in their respective vehicles.

Officers then stopped Bucci and searched his vehicle.  Based on all the information known to the officers at the time they stopped Bucci, they had probable cause to believe there

---

[6]There was a factual dispute as to whether or not agents found marijuana in Belmonte's trailer <u>before</u> they stopped Bucci.  But the district court expressly did "not rely on the evidence seized from Belmonte's trailer in assessing whether the Government possessed probable cause to stop and search Bucci's motor vehicle."

was evidence of criminal activity in his vehicle at that time.[7]

## C. Government's rebuttal opening statement

Bucci challenges both the district court's decision, at trial, to permit the Government to give a rebuttal opening statement and the substance of that statement. Although rebuttal opening statements are rare, generally the management of a trial is left to the district court's discretion. See United States v. Moore, 923 F.2d 910, 913 (1st Cir. 1991). So, too, is "[t]he scope and extent of an opening" statement. United States v. Hershenow, 680 F.2d 847, 858 (1st Cir. 1982). Here, the district court did not abuse its discretion in allowing the Government a rebuttal opening statement. Nor does the substance of that statement warrant relief.

---

[7]Bucci's chief argument on appeal is that there was never any previous indication that he had ever delivered drugs in his own vehicle. First, that is not true. The district court determined that, on March 28, 2003, the video surveillance camera captured Bucci and another man loading several large bags into Bucci's car and then driving away; Bucci returned home alone an hour later. Bucci has never specifically challenged any of the district court's factual recitation. Moreover, even without any previous connection specifically between Bucci's vehicle and the prior observed conduct, probable cause existed to believe that, on June 4, 2003, there was evidence of criminal activity in his vehicle.

**D.   Sentencing issues**

   **1.   Basing Bucci's sentence on the amount of drugs
        found by the district court**

Bucci contends that the district court violated his

Sixth Amendment right to a jury trial by basing his sentence

on the court's factual finding, made by a preponderance of

the evidence, that Bucci was responsible for 2,900 kilograms

of marijuana.[8]  Because Bucci did not raise this argument in

the district court, we review for plain error.  See Fed. R.

Crim. P. 52(b); see also Puckett v. United States, 129

S. Ct. 1423, 1428-29 (2009).  Here, we find no error.

The jury found beyond a reasonable doubt that Bucci

participated in a conspiracy involving more than 1,000

kilograms of marijuana.  That finding established both the

statutory mandatory minimum sentence Bucci faced on his

drug-trafficking conspiracy conviction and "the maximum

penalty the district court may impose."  United States v.

Santiago, 560 F.3d 62, 67 (1st Cir. 2009), petition for

cert. filed, (U.S. June 6, 2009) (No. 08-10809).  But in

---

   [8]Bucci   also   argues   that   "increasing   the
mandatory-minimum [statutory] sentence" required by his
drug-trafficking conspiracy conviction, "based upon judicial
findings [made] by a preponderance of the evidence[,]
violates the Sixth Amendment."  But Bucci acknowledges that
the Supreme Court, as well as the First Circuit, has already
rejected this argument. See Harris v. United States, 536
U.S. 545, 557 (2002) (plurality opinion); United States v.
Goodine, 326 F.3d 26, 27-32 (1st Cir. 2003).

- 20 -

calculating Bucci's offense level under the sentencing guidelines, the court properly found by a preponderance of the evidence that Bucci's offenses and his related conduct actually involved 2,900 kilograms of marijuana. <u>See</u> <u>United States</u> v. <u>Cruz-Rodriquez</u>, 541 F.3d 19, 32 (1st Cir. 2008), <u>cert. denied</u>, 129 S. Ct. 1017, 1923 (2009).

Under <u>United States</u> v. <u>Booker</u>, 543 U.S. 220 (2005), Sixth Amendment error does not occur because the district judge found facts, by a preponderance of the evidence, that increased the defendant's sentence beyond that authorized by the jury's verdict; rather, Sixth Amendment error occurs when the district court does so while treating the sentencing guidelines as mandatory rather than advisory. <u>See</u> <u>United States</u> v. <u>Luciano</u>, 414 F.3d 174, 179 (1st Cir. 2005). And that did not happen here.

**2. Whether the district court realized the discretion it had to impose a below-guideline sentence**

Bucci next argues that the sentencing court did not realize the extent to which it had discretion to impose a sentence below the advisory guideline range. As proof, Bucci points to the district judge's announcement, after imposing a sentence at the bottom of the advisory guideline range, that "I, myself, don't believe in sentences as long as I imposed today, but I couldn't in my conscience as a judge find reasons that I should go below the guidelines;

and accordingly, I've sentenced you to the bottom of the guidelines."[9]

Viewing the sentencing proceeding as a whole, we conclude, instead, that the district court was fully aware of its discretion to impose a below-guideline sentence. See Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 591, 596-97, 602 (2007); Rita v. United States, 551 U.S. 338, 350-55 (2007). The court's awareness is best illustrated by a spirited exchange the court had with the prosecutor during the first of two sentencing hearings: In response to the Government's argument that the court could only "legally sentence" Bucci as low as the bottom of the Presentence Report's recommended guideline range, the court inquired

>    THE COURT: I don't quite understand.
>
>    [PROSECUTOR]: Here's why.
>
>    THE COURT: A Court is authorized to go below that.
>
>    [PROSECUTOR]: I understand, your Honor. But—

---

[9]In light of this statement, the Government concedes that Bucci's case should be remanded for the limited purpose of allowing the district court to resentence Bucci. We are not bound by the Government's concession, however. See Orloff v. Willoughby, 345 U.S. 83, 87 (1953); see also United States v. Rodriquez, 433 F.3d 411, 414 n.6 (4th Cir. 2006) (noting that "we are not at liberty to vacate and remand for resentencing on the Government's concession alone," citing supporting authority).

THE COURT: I'm not saying in this particular case that I should or I would, but I certainly have the power to do so.

[PROSECUTOR]: I'm not saying you don't have the power, I'm saying . . . I don't think the Court on this record could deviate below 151 months [the bottom of the Presentence Report's recommended guideline range] in a way that would be legally tentative [sic], okay, and here's why: The Supreme Court in United States versus Rita on June 21st held that the sentencing guideline range is presumptively reasonable.

THE COURT: Yes.[10]

[PROSECUTOR]: Of course courts have the discretion to go below it, but if they do, they need to, in detail, justify why they're going below.

THE COURT: Of course.

[PROSECUTOR] And I don't think it can be done on this record. . . .

. . . .

[PROSECUTOR]: What the government is asking for is a sentence that is based on the law —

THE COURT: Oh, come on.

---

[10]During the second sentencing hearing, defense counsel accurately asserted that

when we were here the last time, certain statements were made by the government in terms of what Rita v. United States means and about a presumption of reasonableness, and I'll just point out that Rita very clearly says on page 12 of the majority decision that the presumption that they're talking about here does not apply to the district court; that is an appellate review standard.

See Rita, 551 U.S. at 351. The court responded, "I've read Rita since the last time and I'm aware of that, yes."

> [PROSECUTOR]: — and the evidence.
> Well, your Honor, you make a statement like that, and I'm sorry, but with all due respect, the government is asking for a sentence —
>
> THE COURT: Are you aware of the words in [18 U.S.C.] 3553 which say "sufficient but not unnecessary" or "not excessive"?
>
> [PROSECUTOR]: I am aware of that, your Honor.
>
> THE COURT: Well, those words are important.

This exchange, as well as the entire sentencing record considered as a whole, reflects the district court's clear understanding that it had discretion to impose a below-guideline sentence.

On appeal, Bucci also points to Kimbrough v. United States, 552 U.S. 85, 128 S. Ct. 558, 564 (2007), which the Supreme Court decided after Bucci's sentencing, as affording a district court even greater discretion to impose a below-guideline sentence than the district court had at the time it sentenced Bucci. Kimbrough recognized the "district courts' authority to vary from the crack cocaine Guidelines based on [the sentencing court's] policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." Spears v. United States, 129 S. Ct. 840, 843 (2009); see also Kimbrough, 128 S. Ct. at 564.

- 24 -

Relying on Kimbrough, Bucci appears to argue, for the first time on appeal, that drug-trafficking sentences under the guidelines are unnecessarily long as a policy matter. The First Circuit has "remanded pre-Kimbrough sentences without preserved claims where 'there was some explicit indication that the district court might well alter its sentence.'" Santiago, 560 F.3d at 68 (quoting United States v. Boardman, 528 F.3d 86, 87 (1st Cir. 2008)) (alterations omitted). But we do not read the district court's comment — "I, myself, don't believe in sentences as long as I imposed today, but I couldn't in my conscience as a judge find reasons that I should go below the guidelines," — as indicating that the court might well alter the sentence it imposed on remand. Instead, we interpret the district court's remarks as an indication that there was no reason the court could find in this case that would justify imposing a below-guideline sentence. See United States v. Olivero, 552 F.3d 34, 42 (1st Cir. 2009) (holding district court's remarks that "it could not act on an 'individual sense of justice' and that it had to apply rules that 'it would rather not apply if [it] were free to decide otherwise'" did not show that the sentencing court was unaware of discretion to impose below-guideline sentence; instead, the remark indicated that the sentencing court did

not believe "there was [any] reason to depart from the Guidelines"), cert. denied, 129 S. Ct. 2174 (2009).  And a district court, in exercising its discretion to impose a below-guideline sentence, must still do so in a reasoned manner.  See Gall, 128 S. Ct. at 596-97; see also United States v. Taylor, 532 F.3d 68, 70 (1st Cir. 2008).  Therefore, we decline to remand Bucci's case for resentencing on this basis.  See United States v. King, 554 F.3d 177, 182 (1st Cir. 2009), cert. denied, 129 S. Ct. 2169 (2009).

### 3. Whether the district court adequately considered Bucci's argument for a below-guideline sentence

Bucci argues that the district court did not adequately consider his argument for a below-guideline sentence, based upon the sentencing disparity between Bucci and his co-conspirators.  Bucci acknowledges that he did not object at sentencing to the alleged inadequacy of the district court's consideration of his argument; Bucci, therefore, concedes this court should review this issue for plain error.  See Fed. R. Crim. P. 52(b).

Even assuming for argument's sake there was error, Bucci must also show that such error affected his substantial rights.  See Puckett, 129 S. Ct. at 1429.  In the sentencing context, that means Bucci must show that there is a "reasonable probability that, but for the error, the

district court would have imposed a different, more favorable sentence." United States v. Gonzalez-Castillo, 562 F.3d 80, 83 (1st Cir. 2009) (quotation omitted). Bucci has not shown that here.

**E. Whether the district court erred in instructing the jury that "proceeds" from Bucci's drug trafficking, for purposes of forfeiture under 21 U.S.C. § 853, meant gross receipts**

Bucci challenges the instruction the district court gave jurors defining "proceeds" for forfeiture purposes. Because Bucci did not object to this instruction after the trial court gave it to the jury, this court reviews for plain error. See United States v. Roberson, 459 F.3d 39, 45 (1st Cir. 2006).

The forfeiture provision at issue here, 21 U.S.C. § 853(a)(1), provides in relevant part that "[a]ny person convicted of a violation of this subchapter" addressing drug trafficking "shall forfeit to the United States . . . (1) any property constituting or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." (Emphasis added.) In Bucci's case, the district court instructed the jury that

> [p]roceeds of drug trafficking include any monies or other property that a defendant obtained directly or indirectly as the result of his drug-trafficking violations. Proceeds include the total amount of gross proceeds obtained by the defendant as a result of his drug trafficking and is not reduced by any amounts the defendant paid

for the drugs he later sold or for any other costs or expenses he incurred.

(Emphasis added.)

This instruction is consistent with First Circuit authority. In United States v. Hurley, 63 F.3d 1, 21 (1st Cir. 1995), we previously held that "proceeds," for forfeiture purposes under 18 U.S.C. § 1963, were not limited to net profits. Although we reached this conclusion in a case involving the similarly worded forfeiture statute under 18 U.S.C. § 1963, rather than 21 U.S.C. § 853,[11] we have

_____

[11]The forfeiture statute at issue here, 21 U.S.C. § 853(a), provides in pertinent part:

[a]ny person convicted of a violation of this subchapter . . . punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

    . . . .

The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter . . . , that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

(Emphasis added.) The concluding paragraph of the forfeiture provision found at 18 U.S.C. § 1963(a) is worded almost identically. Furthermore, Congress expanded
(continued...)

- 28 -

further recognized that "case law under 18 U.S.C. § 1963 is persuasive in construing 21 U.S.C. § 853, and vice versa," United States v. White, 116 F.3d 948, 950 (1st Cir. 1997). Thus, the question of whether the forfeiture instruction the district court gave Bucci's jurors complied with First Circuit precedent is an easy call; it did.

The legislative history underlying § 853's enactment bolsters our conclusion.

> Congress substantially amended § 853 along with other forfeiture provisions as part of the Comprehensive Crime Control Act of 1984 to enhance the effectiveness of then existing forfeiture statutes under both the Organized Crime Control Act, which was aimed at "racketeer influenced and corrupt organizations" (RICO), and the Drug Control Act. The legislative history leaves no doubt that Congress intended to impose the sanction of criminal forfeiture against drug traffickers in order to strip these offenders and organizations of their economic power.

United States v. Caparotta, 571 F. Supp.2d 195, 200 (D. Me. 2008) (citations omitted).

The legislative history underlying the similarly worded § 1963 further "explains without qualification that the term 'proceeds' has been used in lieu of the term 'profits' in order to alleviate the unreasonable burden on the government

---

[11](...continued) § 1963(a) at the same time that it created § 853's "drug-related forfeiture provision." United States v. White, 116 F.3d 948, 950 (1st Cir. 1997). And, at that time, Congress noted that § 853(a) "closely parallel[s]" § 1963(a). See White, 116 F.3d at 950.

of proving net profits." Hurley, 63 F.3d at 21 (quotation omitted). The same is true in forfeiture proceedings under § 853(a). See Caparotta, 571 F. Supp.2d at 200. For these reasons, we conclude that, at the time the district court gave this instruction, it was correct under First Circuit authority. Bucci concedes as much.

Bucci argues, however, that a subsequent Supreme Court case, United States v. Santos, 128 S. Ct. 2020 (2008) (plurality opinion), now makes the forfeiture instruction given in his case wrong.[12] We cannot agree.

In Santos, a plurality of the Court held that the term "proceeds," as used in yet another forfeiture statute, 18 U.S.C. § 1956(a), meant "'profits' rather than 'receipts,' at least when the predicate offense is an illegal lottery operation."[13] Levesque, 546 F.3d at 82 (citing Santos, 128

---

[12]This precise issue was raised in United States v. Levesque, 546 F.3d 78, 81-82 (1st Cir. 2008). In that case, we remanded the question to the district court to address it in the first instance and thus we did not resolve the issue. See id. at 82-83.

[13]18 U.S.C. § 1956(a)(1), which is codified among general federal racketeering and money laundering statutes, see 18 U.S.C. §§ 1951-1960, provides in pertinent part that

> [w]hoever, knowing that the property involved in a financial transaction represents proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of unspecified unlawful activity—

(continued...)

- 30 -

S. Ct. at 2025 (plurality opinion), and Santos, 128 S. Ct. at 2033-34 (Stevens, J., concurring in the judgment)). Based upon Santos, Bucci submits that the question presented here is whether "the monies which may be forfeited under a[] [21] U.S.C. § 853 money judgment are the gross proceeds of the offense or [instead are] the gross profits after the cost of the drugs sold is subtracted."[14]

Contrary to Bucci's argument, Santos is not controlling here. The forfeiture statute at issue in Santos, 18 U.S.C.

---

[13](...continued)

> (A)(i) with the intent to promote the carrying on of specified unlawful activity;
>
> . . . .

shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

(Emphasis added.) Section 1956, then, not only addresses forfeiture, but also sets forth a substantive money laundering offense.

[14]Bucci argues, then, that "proceeds" means "gross profits"—the gross proceeds minus the cost of the drugs. He does not contend that "proceeds" means "profits," which Bucci defines as the gross proceeds minus all expenses incurred in Bucci's drug-trafficking business.

- 31 -

§ 1956(a), is distinguishable from the statute at issue here, 21 U.S.C. § 853, in at least two critical respects. First, § 1956(a) refers only to "proceeds," and does not use the phrase "profits or other proceeds" that is found in § 853. To interpret the term "proceeds" in the phrase "profits or other proceeds" to mean profits would render the word "profits" redundant. See Caparotta, 571 F. Supp.2d at 199; see also Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 669 (2007) (cautioning "against reading a text in a way that makes part of it redundant"). The language found in § 1956(a), on the other hand, which was at issue in Santos, refers only to "proceeds" and does not contain the additional word "profits," and thus does not present this redundancy problem.

Second, § 1956(a) sets forth not simply a forfeiture provision, but also a substantive criminal offense. That was a critical point for the Santos plurality. In Santos, the defendant was convicted of both conducting an illegal gambling business, in violation of 18 U.S.C. § 1955, and money laundering under 18 U.S.C. § 1956(a), which required proof that the defendant used the proceeds of the illegal gambling operation to "promote" that illegal business. See Santos, 128 S. Ct. at 2023. Justice Stevens, who provided the fifth vote in Santos, see id. at 2031, was particularly

concerned about the "perverse" result that would occur if the Government were allowed "to treat the mere payment of the expense of operating an illegal gambling business," the operation of which is itself a federal offense, as a separate money laundering offense under § 1956(a).  Santos, 128 S. Ct. at 2032-33.  According to Justice Stevens, that "perverse" result is "tantamount to double jeopardy, which is particularly unfair in [Santos'] case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business."  Id. at 2033.  This same "merger" problem also concerned the four members of the Santos plurality.  See id. at 2026-28.

Under 21 U.S.C. § 853, however, there is no possibility of such a "perverse" merger problem because, unlike the forfeiture statute at issue in Santos, the forfeiture statute here, § 853(a), does not set forth a substantive criminal offense.  Instead, "[t]o become subject to a forfeiture under § 853, a defendant has to be convicted of a predicate crime under Title 21, and, upon such conviction, § 853 simply assures that a drug dealer is deprived of the economic power generated by illegally deprived wealth." Caparotta, 571 F. Supp.2d at 199-200.

For these reasons, the district court did not plainly err in instructing Bucci's jury that "proceeds" meant "gross proceeds."

III. **CONCLUSION**

We AFFIRM Bucci's convictions, sentence and the forfeiture orders in all respects.