UNITED STATES of America,
Plaintiff,

v.

Jerome Andrew CAREY, Defendant.

Criminal Case No. 16–54–01 (JDB)

United States District Court,
District of Columbia.

Signed 03/28/2017

Kara Martin Traster, U.S. Attorney's Office, Washington, DC, for Plaintiff.

Howard Bernard Katzoff, Law Offices of Howard Katzoff, Washington, DC, for Defendant.

## ORDER

JOHN D. BATES, United States District Judge

On October 5, 2016, defendant Jerome Andrew Carey pleaded guilty to one count of conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), and 846. See Plea Agreement [ECF No. 48]. The plea

agreement included a preliminary consent order of forfeiture, pursuant to which Carey agreed to forfeit any proceeds from the offense as determined by the Court, as authorized by 21 U.S.C. § 853. See Preliminary Consent Order of Forfeiture [ECF No. 49].

█ The Court held a sentencing hearing on January 12, 2017, and sentenced Carey to 76 months of incarceration followed by four years of supervised release, as well as a special assessment of $100. See Jan. 12, 2017 Minute Entry. At the sentencing hearing, the defendant raised the issue of whether the term "proceeds" in the forfeiture statute, 21 U.S.C. § 853, refers to his gross proceeds or net profits. The Court postponed issuing the Judgment imposing Carey's sentence until the forfeiture issue could be fully briefed. Now that the Court has received additional briefing on the issue from the defendant and the government, as well as an amicus curiae brief from the Federal Public Defender, the Court determines that the term "proceeds" in § 853 refers to gross proceeds. For the reasons explained below, the Court will order Carey to forfeit a money judgment in the amount of $92,500.

Section 853 requires persons convicted of certain enumerated crimes to forfeit the proceeds of those crimes to the government. See 21 U.S.C. § 853(a); see also Fed. R. Crim. P. 32.2 (describing process for imposing forfeiture order). There is no dispute that § 853 applies to the crimes to which Carey pleaded guilty. Section 853(a) states that a defendant, once convicted, shall forfeit: "(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; and (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." 21 U.S.C. § 853(a). It further states that "[t]he provisions of this section shall be liberally construed to effectuate its remedial purposes." Id. § 853(o). Carey's primary argument is that the term "proceeds" as used in § 853(a)(1) refers to net profit (that is, all of the income from the crime minus the expenses) not gross proceeds (simply all of the income).[1] He asserts that two cases, United States v. Santos, 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008), and United States v. Cano–Flores, 796 F.3d 83 (D.C. Cir. 2015), compel that conclusion. However, the text of the statute and the weight of relevant precedent convince the Court that "proceeds" as used in § 853(a) means gross proceeds, and the two cases Carey relies on do not indicate otherwise.

The Court first looks to the statute's text and context to understand its meaning. Cano–Flores, 796 F.3d at 91. Section 853 does not explicitly state which meaning of "proceeds" it employs. As the Supreme Court has explained, the term "'[p]roceeds' can mean either 'receipts' or 'profits' ... in ordinary usage." Santos, 553 U.S. at 511, 128 S.Ct. 2020 (plurality opinion). Thus, "[r]ecognizing the word's inherent ambiguity, Congress has defined 'proceeds' in various criminal provisions, but sometimes has defined it to mean 'receipts' and sometimes 'profits.'" Id. at 512, 128 S.Ct. 2020 (citations omitted).

Here, however, "since context gives meaning," the word "proceeds" as used in the context of § 853 is not ambiguous. See id. at 512, 128 S.Ct. 2020. The section repeatedly uses language that indicates its scope is as broad as possible. It empha-

---

1. The case law sometimes uses "gross receipts" or "gross revenue" or simply "receipts" to refer to "gross proceeds."

sizes that "any property constituting, or derived from, any proceeds" is included, whether obtained "directly or indirectly." 21 U.S.C. § 853(a)(1). The expansive definition of covered property—that is, any property "used, or intended to be used, in any manner or part" to commit the crime, id. § 853(a)(2), including "tangible and intangible personal property, including rights, privileges, interests, claims, and securities," id. § 853(b), underscores the point. As the Supreme Court has remarked regarding § 853(a), "Congress could not have chosen ... broader words to define the scope of what was to be forfeited." United States v. Monsanto, 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). The majority of circuit courts to consider whether "proceeds" in § 853 means net profits or gross receipts have reached the same conclusion. See United States v. Heilman, 377 Fed.Appx. 157, 211 (3d Cir. 2010); United States v. Bucci, 582 F.3d 108, 121–124 (1st Cir. 2009); United States v. Casey, 444 F.3d 1071, 1076 n.4 (9th Cir. 2006); United States v. Keeling, 235 F.3d 533, 537 (10th Cir. 2000); United States v. McHan, 101 F.3d 1027, 1042 (4th Cir. 1996).[2]

▮ Neither of the two cases relied on by the defendant convince the Court that this interpretation based on the statute's plain text is incorrect. Recently, the D.C. Circuit considered whether a single conspirator could be ordered to forfeit proceeds gained by all co-conspirators that were reasonably foreseeable to him, rather than the proceeds that he alone acquired. Cano–Flores, 796 F.3d at 90–95. The court held that the phrase "any proceeds the person obtained" in § 853(a)(1) limited the

permissible forfeiture amount to the defendant's proceeds alone. Id. at 95. The court provided extensive reasoning, but as relevant here, it explained that even if the statute "permit[ed]" the government's construction, '[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.'" Id. at 93–94 (quoting Santos, 553 U.S. at 514, 128 S.Ct. 2020) (second alteration original). The court further explained that the rule of lenity carried more weight than § 853(o)'s instruction to construe the forfeiture statute liberally. Id. at 94. Carey argues that, as in Cano–Flores, the rule of lenity requires this Court to construe "proceeds" to mean net profits, not gross receipts.

▮ Carey misunderstands the rule of lenity. The rule does apply "to sentencing as well as substantive provisions." United States v. Batchelder, 442 U.S. 114, 121, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); Cano–Flores, 796 F.3d at 94. And, as the D.C. Circuit explained, it can trump the command in § 853(o) to construe the statute broadly. But it only applies when the statutory text is ambiguous. Cano–Flores, 796 F.3d at 93–94. Here, as explained above, the text is clear: proceeds means gross receipts, not net profits. The rule of lenity is thus inapplicable.

The Supreme Court's decision in Santos has even less bearing on this case. In Santos, the court held that the term "proceeds" in the statute defining predicate offenses for money-laundering crimes, 18 U.S.C. § 1956(a)(1), was ambiguous and therefore under the rule of lenity must

---

2. The Seventh Circuit has interpreted the word "proceeds" in the analogous section in the RICO statute as referring only to net profits. See United States v. Masters, 924 F.2d 1362, 1369–70 (7th Cir. 1991); United States v. Genova, 333 F.3d 750, 761 (7th Cir. 2003).

In the D.C. Circuit, however, "proceeds" in the RICO statute refers to gross proceeds, not net profits. United States v. DeFries, 129 F.3d 1293, 1314 (D.C. Cir. 1997) (describing circuit split).

mean only net profits, not gross receipts. See Santos, 553 U.S. at 513–14, 128 S.Ct. 2020 (plurality opinion); id. at 527–28, 128 S.Ct. 2020 (Stevens, J., concurring in the judgment).[3] That ruling concerned a different statute than the one at issue here, with different statutory text. Moreover, the Court (in both the plurality and the concurring opinions) was concerned with the "merger" problem that would arise if the same underlying conduct—paying the expenses of running an illegal gambling operation—sufficed for both the gambling offense and the money-laundering offense. See id. at 514–16, 128 S.Ct. 2020 (plurality opinion); id. at 527, 128 S.Ct. 2020 (Stevens, J., concurring in the judgment). That problem is not relevant here, because § 853 is only a forfeiture provision; it does not define a substantive offense. For these reasons, multiple circuits have concluded that, despite Santos, "proceeds" as used in § 853 refers to gross receipts, not net profits. See, e.g., Bucci, 582 F.3d at 121–24; Heilman, 377 Fed.Appx. at 211. This Court finds the reasoning of those circuits to be persuasive, and adopts it here. Thus, the Court reads the term "proceeds" as used in § 853(a)(1) to mean gross proceeds.

Finally, Carey raises a handful of other objections to the forfeiture. He argues that the government's calculation of his proceeds as $92,500 is unconstitutionally excessive in violation of the Eighth Amendment's prohibitions on excessive fines. He also argues that because he has already spent the assets earned through his criminal conduct, any money judgment against him is an unconstitutional taking, and that

the government must follow the procedures outlined in § 853(p) to seize substitute assets.

None of these arguments is serious. Money judgments, rather than seizures of particular assets that were acquired through criminal activities, are permitted by § 853. United States v. Day, 524 F.3d 1361, 1378 (D.C. Cir. 2008). Such judgments are permitted even when the defendant has already disposed of the assets in question, and regardless of whether the defendant disposed of those assets so as to avoid forfeiture. See id.; United States v. Newman, 659 F.3d 1235, 1242–43 (9th Cir. 2011). Moreover, the requirements of § 853(p) do not apply to the imposition of money judgments. Newman, 659 F.3d at 1242–43. Rather, the question is whether the procedures of Federal Rule of Criminal Procedure 32.2 were satisfied, and there is no dispute that they were here. See id. ("When the government seeks a money judgment, Rule 32.2(b) does not permit the court to do anything other than 'determine the amount of money that the defendant will be ordered to pay,' which is specified by statute.").

The only remaining question is whether $92,500, the amount calculated by the government, is correct. Under Rule 32.2(b)(1)(B), a court's determination of the amount to be forfeited "may be based on the evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable."[4] Fed. R.

3. That court did not issue a majority opinion, rather it issued a plurality opinion and a separate concurrence by Justice Stevens, which is the narrowest opinion and therefore controls. See id. at 523, 128 S.Ct. 2020 (plurality opinion) (noting, "since [Justice Stevens's] opinion rests upon the narrower

ground, the Court's holding is limited accordingly").

4. Additionally, "[i]f the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty." Fed. R. Crim. P. 32.2(b)(1)(B). In

Crim. P. 32.2(b)(1)(B). Here, the defendant consented to the forfeiture and agreed that the Court would determine the proper amount of the money judgment. See Preliminary Consent Order of Forfeiture; Fed. R. Crim. P. 32.2(b)(1)(A). The Court may rely on the quantities of drugs distributed and the price of those drugs to determine the amount of the money judgment. See United States v. Alexander, 714 F.3d 1085, 1092–93 (8th Cir. 2013).

The Statement of Offense, which the defendant agreed accurately represents the facts, states that he is responsible for between 2 and 3.5 kilograms of cocaine, which he purchased at a wholesale price of $18,500 per 500 grams. See Statement of Offense [ECF No. 47] ¶¶ 2, 16. The government takes a "conservative approach" to calculating his proceeds, and determines that if he sold 2.5 kilograms at that price, his proceeds were $92,500. See Gov't Mem. Determining Amount of Forfeiture [ECF No. 70] at 5. Carey does not present any information contesting this specific numeric calculation. The Court therefore accepts this calculation of Carey's proceeds, and will impose a money judgment in that amount.

## CONCLUSION

For the reasons explained above, the Court will impose a money judgment of $92,500 against the defendant. A separate Judgment has been issued on this date.

---

defendant's memorandum of law submitted following the sentencing hearing, he requests a hearing to determine his net profits. See Def.'s Br. [ECF No. 71] at 6. Because the Court already held a sentencing hearing, and because the Court interprets § 853(a) to re-

---

quire forfeiture of gross proceeds, not net profits, the Court does not believe that Rule 32.2(b)(1)(B) requires holding a hearing in this instance, since no hearing has been requested for the straightforward computation of gross proceeds.